[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO TERMINATE ALIMONY AND TO SETCHILD SUPPORT AMOUNT (#133).
The marriage of the parties was dissolved on June 29, 1995. Incident thereto, the parties had entered into a separation agreement which was incorporated by reference into the court's decree. Article III of that Agreement contains provisions concerning alimony and child support. Paragraph 3.2 provides that:
 "The Husband shall pay to the Wife until the sooner happening of her remarriage, cohabitation (as that CT Page 5163-ZZZ term is defined by statute), the attainment of full time employment (herein defined as thirty-five (35) or more hours per week) or June 1, 1997, the sum of $275 per week as unallocated alimony and child support commencing on July 9, 1995." (Emphasis added).
The same paragraph provides that upon the happening of any of these events, the Wife's right to receive alimony from the Husband would terminate, and that the Husband would thereafter pay child support, only, in accordance with the Child Support Guidelines.
The defendant has now moved to terminate his alimony obligation and to set a child support amount. The essence of his motion is that the plaintiff has, at different periods, worked at full time employment so as to activate the emphasized term,supra, of the separation agreement, thereby terminating the plaintiff's right to receive alimony.
The court finds the following facts as a result of a hearing on this motion. From approximately July, 1995 through January, 1996, the plaintiff was actively engaged in work through Accountemps, a temporary agency. Her first placement was with Poly Star Packaging, in July and August, 1995. The plaintiff did not work more than 20 hours per week while at Poly Star. The plaintiff's second temporary assignment, again through Accountemps, was with Act Media, from September, 1995 through January, 1996. The plaintiff worked generally more hours at this assignment but, with the exception of two weeks, did not work 35 hours or more per week. The exceptions were one week each month in October and November, 1995, when the plaintiff worked exactly 35 hours during those weeks. Finally sometime in March, 1996 or shortly thereafter, the plaintiff became employed (not through Accountemps) at Wahlstrom's as a billing clerk. The plaintiff told Wahlstrom's of her 35 hour employment restriction. Accordingly, while there she did not work 35 hours or more per week, although those hours would have been available to her. The plaintiff was laid off by Wahldtrom's in May, 1996.
The principal issue before the court is whether the plaintiff's working for Act Media for two weeks of 35 hours each, triggers the full time employment provision the separation agreement thereby terminating the plaintiff's alimony. On the basis these facts, this court holds that it does not. While thirty-five hours per week may have been the agreed benchmark for CT Page 5163-AAAA "full time", the plaintiff's temporary assignment which resulted in two isolated incidents of 35 hour weeks, does not qualify as "full time employment" within the plain and common meaning of the parties' separation agreement.
Words and provisions in a separation agreement, as in a contract, must be given their plain and ordinary meaning, whenever possible. Cogan v. Cogan, 186 Conn. 592, 596 (1982). "Employment" means the "act of employing or state of being employed. . . ." Black's Law Dictionary (4th Ed. 1968), page 618;Sturges v. Administrator, 27 Conn. Sup. 215, 218 (1966). "Employment" naturally connotes the existence of an employer/employee relationship. An employee is one who is understood to have "some permanent employment or position." Black's, supra, at 617. "The word `permanent' is the opposite of temporary or transient." Hallihan v. Mutual Life Insurance Co.,9 Conn. Sup. 209, 221 (1941). It is clear, then, that full time employment essentially means permanent employment. It connotes employment which is regular and steady, Ballentine's Law Dictionary, (3rd Ed. 1969) pages 507, 936, and is not employment which is only temporary or casual Ballentine's, supra, at 179; also, DeCarli v. Manchester Public Warehouse Co., 107 Conn. 359
(1928). Temporary employment may, over time and under other circumstances, evolve into full time, permanent employment. This would require the court to demarcate where temporary employment ends and full time employment begins. However, when the facts of this case are juxtaposed against these legal principles, it is clear that the nature of the plaintiff's engagement was not "full time employment" within the meaning of the parties' separation agreement.[1]
While the above disposes of the defendant's motion to terminate alimony, it leaves unresolved the issue of whether the defendant's unallocated alimony and child support should be modified downward due to changed financial circumstances of the defendant. The defendant also offered evidence from which the court finds that at the time of the marital dissolution, the defendant owned a variety business in Stamford and was earning $757 per week, gross, $558 per week net. He also had net rental income of $185 per week. This resulted in a total net weekly income of $743 at the time of the dissolution. Subsequent to the dissolution, circumstances resulted in the variety store losing about half of its business, prompting the defendant to sell it. The sale price was $40,000. The evidence was inconclusive as to whether and when the defendant would receive any payments from CT Page 5163-BBBB the sale of the business. In the meantime, the defendant has taken up new work as a lab technician and earns $593 per week gross, $433 per week net. The defendant's expenses have declined from $964 at the time of the dissolution to $735 presently.
The court finds a substantial change of circumstances in the decline of the defendant's income, which would justify some relief to the defendant. Accordingly, the court reduces the defendant's unallocated alimony and support from $275 per week to $225 per week, effective May 1, 1996. The total net overpayment from May 1, forward, shall be deducted from the defendant's new $225 weekly obligation at the rate of $50 per week until the defendant is recompensed for his overpayment. Following that, the defendant's obligation shall revert to $225 per week.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of July, 1996.
JOHN F. KAVANEWSKY, JR., JUDGE