RUSSELL E. COGAN *v.* VENUS A. COGAN

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued February 4—decision released March 30, 1982

*Howard C. Kaplan,* for the appellant (defendant).

*Stewart M. Casper,* with whom, on the brief, was *Elaine T. Silver,* for the appellee (plaintiff).

PARSKEY, J.  This case involves the construction of the alimony provisions of a separation agreement which was incorporated in a dissolution decree.  The agreement provided for monthly payments of alimony to the defendant wife, the amount of such payments to be determined according to a schedule based on the plaintiff husband's gross annual income.  The trial court, in deciding the defendant's motion for contempt in the plaintiff's favor, interpreted the agreement to mean "that any change in gross income either upwards or down is to bring about an immediate calculation of alimony payments due, projecting the increase or decrease on an annual basis."  Because we disagree with this interpretation, we reverse.

The alimony provisions are contained in article second, paragraph 2 of the agreement.  This paragraph provides: "During the life of Husband and until the remarriage of Wife as defined herein, Husband shall pay to Wife on the first day of each month alimony as follows:  a percentage of Husband's gross annual income, as defined hereinafter, according to the following table:

| HUSBAND'S ANNUAL INCOME | ALIMONY TO WIFE MONTHLY |
|---|---|
| $ 0 - $20,000 | $ 500 |
| $20,000 - $25,000 | $ 600 |
| $25,000 - $30,000 | $ 800 |
| $30,000 - $35,000 | $ 800 |
| $35,000 - $40,000 | $ 900 |
| $40,000 - $45,000 | $ 1,000 |
| $45,000 - $50,000 | $ 1,100 |
| $50,000 - $55,000 | $ 1,175 |
| $55,000 - $60,000 | $ 1,250 |

| [Husband's Annual Income] | [Alimony to Wife Monthly] |
|---|---|
| $60,000 - $65,000 | $ 1,250 |
| $65,000 - $70,000 | $ 1,300 |
| $70,000 - $75,000 | $ 1,300 |
| $75,000 and up | $ 1,350" |

The agreement further provides the following: "As used herein, the term gross income shall include salary and all other earned income of Husband, all retirement and pension benefits received by Husband, social security payments received by Husband, all severance pay or other income received by Husband from IBM and all bonuses received by Husband. Gross income shall not include dividend income, unemployment compensation, interest income, notes and other receivables, capital gains, tax refunds or income received from the sale of personal or real property.

"It is understood and agreed between the parties that the payments provided for herein shall not be affected by any change in the assets or income of Wife. Husband agrees to supply Wife, not less than annually, with copies of his Federal Income Tax Return and W-2 Withholding Statements, and to promptly notify Wife immediately of all changes in his gross income as defined above. In the event that Husband shall fail to provide Wife with immediate notification of any such change in gross income, all adjustments provided for hereunder shall, upon verification of such change, be made retroactive to the date of such change in gross income.

"As further alimony, Husband agrees to pay and reimburse Wife for all federal, state and local

income taxes which Wife shall be compelled to pay upon the aforesaid alimony payments after Wife shall have taken all available personal deductions and exemptions. Wife shall send to Husband not later than March 15th of each year, all figures and data necessary to compute said additional income tax including all exemptions and deductions, and Husband shall pay to Wife said reimbursement not later than April 10th of said year, said payments and information to refer to the preceding calendar year. Except as expressly set forth herein, each party shall be responsible for their own federal, state and local income taxes. Wife shall provide Husband with copies of Annual Federal Income Tax returns as filed and advise the Husband in advance as to plans to sell Wilton property."

During the calendar year 1977, the plaintiff earned the total sum of $84,016. Of that amount he received $14,416 in December, 1977, $9000 of which represented a bonus. During 1977 he paid the defendant alimony of $14,850, $1350 of which he paid in December and the balance from January through November. According to the table, based on the husband's annual income in excess of $75,000 for the year 1977, he should have paid the wife a total of $16,200 in alimony at the rate of $1350 a month instead of the amount actually paid thus leaving an arrearage of $1350. The difference between the scheduled alimony obligation and the amount actually paid resulted from the plaintiff's calculation of his monthly alimony obligation on the basis of an annual extrapolation of his gross monthly income.

The agreement prescribes a percentage relationship between gross annual income and alimony.

Although the table sets out the income brackets and the monthly alimony payments in dollar amounts, the conversion to percentages is readily ascertainable. Starting with a minimum base of $500 monthly alimony for any income from zero to $20,000, the table proceeds to the $20,000 income bracket where the total alimony during any year ranges from approximately 36 percent to 29 percent of annual income. At the $25,000 income bracket, the total alimony during any year ranges from approximately 38 percent to 27 percent of annual income. At the $35,000 income bracket, the high figure of the range declines at a steady rate until it reaches approximately 22 percent at the top income bracket of $75,000. The items to be included in gross income are specified in the agreement and are not questioned in this appeal. Included in these items are bonuses. The dispute revolves around the meaning of the word "annual." The rule is that the language contained in a contract is to be given its ordinary meaning unless a technical or special meaning is clearly intended. *Central New Haven Development Corporation* v. *La Crepe, Inc.*, 177 Conn. 212, 214–15, 413 A.2d 840 (1979). The word "annual" means "continuing for the period of a year." Black's Law Dictionary (5th Ed.). It connotes actual rather than hypothesized events.

The plaintiff would read "annual" to signify that the plaintiff's income should be "annualized," that is, "to compute for periods of less than a year on a basis corresponding to that applicable to a full year." Webster, Third New International Dictionary. To annualize is to utilize mathematical extrapolations. This process operates on assumptions which may or may not turn out to be true. Thus, in

any given situation, the difference between annual and annualize could be the difference between reality and illusion. For example, assume the plaintiff received income of $2200 a month for six months and no income for the balance of the year. Utilizing the annualization method the husband would be obligated to pay $4800 during the income producing months and the minimum of $3000 during the nonincome producing months. The total annual payment of $7800 would represent 59 percent of his gross income, a percentage more than 50 percent larger than the highest percentage of alimony payable for any income bracket in the table. The opposite result would obtain in situations where the husband received a modest monthly salary coupled with a hefty bonus at year end. By annualizing each month's income, the plaintiff seeks to convert the table from an annual to a monthly income basis. The language of the agreement does not warrant such conversion.

Reliance on the retroactivity clause[1] for the annualization method of calculation is misplaced. One must differentiate between the amount of alimony and the manner of payment. The former establishes how much, whereas the latter establishes when it must be paid, and there is no necessary connection between the two. The statement that alimony shall represent a percentage of the husband's gross annual income and the table which

---

[1] This clause is included in the text, supra, as part of paragraph 2 of the agreement and provides as follows: "Husband agrees . . . to promptly notify Wife immediately of all changes in his gross income as defined above. In the event that Husband shall fail to provide Wife with immediate notification of any such change in gross income, all adjustments provided for hereunder shall, upon verification of such change, be made retroactive to the date of such change in gross income."

translates this percentage into income brackets and alimony amounts establish the defendant's alimony rights and the plaintiff's alimony obligations. The retroactivity clause, on the other hand, focuses on the manner of payment or cash flow. Even without this clause, if the plaintiff's gross annual income during any calendar year places him in a specific annual income bracket in the table, it could not seriously be argued that the defendant would not be entitled to receive the monthly alimony specified for that bracket and the time during the year when the income was received would be immaterial. If, however, as a result of a change in the plaintiff's income it becomes apparent that his annual income is likely to place him in a higher income bracket by year end, the defendant is not obliged to wait until then before receiving her increased monthly payments. Nevertheless, because the amount of alimony payable in any calendar year is based on the plaintiff's actual income during that year, the fact that the defendant received more or less alimony than she was otherwise entitled to receive would not eliminate the need for appropriate adjustment based upon the actual financial data.

Because the dispute involved an honest difference of opinion with respect to the interpretation of the separation agreement rather than a wilful disobedience of a definite court order, ordinarily we would have no quarrel with the trial court's denial of the defendant's motion for contempt. See 17 Am. Jur. 2d, Contempt § 52. But because the court's ruling was based on an erroneous construction of the law applicable to the facts of the case, its judgment cannot stand. Although the trial court is not precluded from conducting a new hearing on the defendant's

motion for contempt, should circumstances warrant it, we do not anticipate noncompliance with the original decree.

There is error, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.