## THOMAS G. AHNEMAN *v.* SUSAN A. AHNEMAN
### (SC 15621)

Callahan, C. J., and Borden, Katz, Palmer and Peters, Js.

Argued September 25, 1997—officially released January 20, 1998

472

*Brenden P. Leydon,* for the appellant (defendant).

*Catherine P. Whelan,* for the appellee (plaintiff).

*Opinion*

BORDEN, J. The issues in this certified appeal are: (1) whether the Appellate Court improperly dismissed, for lack of a final judgment, that portion of the defendant's appeal challenging the trial court's refusal to consider certain of the defendant's postjudgment motions; and (2) whether the trial court had the discretion to refuse to consider those motions. Following our grant of certification,[1] the defendant, Susan A. Ahne-

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly dismiss that portion of the defendant's appeal regarding claimed inaction by the trial court?" *Ahneman* v. *Ahneman,* 240 Conn. 911, 689 A.2d 473 (1997). Counsel for both parties, however, briefed and argued not only this limited issue, but also the closely related issue of the propriety of the trial court's refusal to consider the defendant's motions. As explained in part II of this opinion, after review of the case, we have decided to consider the latter issue.

man, appeals from the judgment of the Appellate Court dismissing, for lack of a final judgment, her second amended appeal (amended appeal) to that court. In her original appeal, the defendant challenged an order of the trial court that modified the alimony and support provisions of the previous judgment dissolving the marriage between her and the plaintiff, Thomas G. Ahneman. In her amended appeal, the defendant sought to challenge the trial court's refusal to consider her subsequently filed motions concerning financial issues while her original appeal was pending.

The defendant claims that the Appellate Court's dismissal of her amended appeal for lack of a final judgment was improper because the trial court's refusal to consider her motions constituted a final judgment and was improper. We agree. Accordingly, we reverse the judgment of the Appellate Court dismissing the defendant's amended appeal, and remand the case to the Appellate Court with direction to remand it to the trial court for prompt consideration of the motions at issue.

The material facts and procedural history are undisputed. On July 5, 1995, the trial court, *Novack, J.*, rendered a judgment dissolving the parties' marriage. The trial court incorporated as part of its dissolution decree the parties' separation agreement concerning alimony, custody, child support, the division of property, and other matters related to the dissolution. The terms of the agreement incorporated into the judgment provided, inter alia, that the plaintiff would pay the defendant $2500 per month in unallocated alimony and child support until October 31, 2000, and thereafter $2600 per month through February 1, 2006. In addition, the judgment obligated the plaintiff: to pay the defendant $300 per month toward certain debts; to pay the cost of their children's parochial school tuition; to maintain $400,000 of life insurance coverage for the benefit of the children; to maintain health insurance for the benefit of

the children; to provide the defendant with a description of the children's health insurance; and to share equally with the defendant the cost of any medical treatment of the children not covered by insurance. Additionally, the judgment allocated to each party a 50 percent interest in the marital residence.

On November 13, 1995, the plaintiff moved for modification of his unallocated alimony and child support obligation claiming that his income had decreased substantially because of a change in his employment. The trial court, *Harrigan, J.*, considered the plaintiff's motion on March 13, 14 and 27, 1996. On June 7, 1996, the trial court granted the motion, reducing the plaintiff's alimony and child support obligation to $220 per week.[2] On June 21, 1996, the defendant appealed from that order to the Appellate Court. The issues raised in that appeal are not presently before us.

During the three weeks following the June 7, 1996 order, the defendant filed a number of motions in the trial court. These motions concerned both financial and nonfinancial issues. On June 17, 1996, the defendant filed a motion for modification of the original July 5, 1995 dissolution judgment seeking an increase in her interest in the marital residence beyond the 50 percent that originally had been awarded, seeking permission to discontinue the children's attendance at parochial school, and, as amended on June 28, 1996, seeking a restoration of her maiden name. On June 19, 1996, the defendant moved to have the plaintiff held in contempt for his alleged failure to pay her the $300 per month toward the marital debts, as required by the original

---

[2] In the June 7, 1996 decision, the trial court also denied the defendant's motion for contempt arising out of the plaintiff's alleged failure to pay the requisite child support and alimony, and his alleged failure to complete the parenting education class ordered by the court. In addition, the trial court denied motions by both the plaintiff and the defendant for orders clarifying aspects of the plaintiff's visitation rights. These decisions were not appealed.

dissolution judgment. On June 21, 1996, the defendant moved for an order compelling the plaintiff to pay the children's medical bills within one month of his receipt of them, imposing a monetary sanction of $100 per bill in the event of his failure to pay within one month, and requiring payment of one half of the counseling bills for one of the children. On that same day, the defendant moved to have the plaintiff held in contempt for his alleged failure: to maintain and to notify her of changes in health insurance policies for the children; to maintain the life insurance coverage required by the dissolution judgment; and to pay past due medical expenses of the children.[3] Also on June 21, 1996, the defendant moved the court to hold the plaintiff in contempt for his alleged: refusal to allow the children to call her during his visitations; failure to notify her promptly that their daughter had received emergency room treatment during his visitation; failure to allow the children to attend extracurricular activities during his visitation; failure to complete the parenting education program; practice of returning the children late from visitations; and disparagement of the defendant while in the presence of the children. Finally, on that same day, the defendant moved for an order clarifying the starting and ending times of the plaintiff's visitations with the children.[4]

At short calendar on July 15, 1996, the trial court rendered an oral decision declining to consider any of the defendant's motions filed subsequent to the June 7, 1996 judgment that is the subject of the original appeal.[5] On July 19, 1996, the defendant moved for

---

[3] On July 2, 1996, the plaintiff, citing a substantial change in his financial circumstances, moved for modification of his obligations concerning the parochial school tuition, health insurance, life insurance and unreimbursed medical expenses.

[4] On June 25, 1996, the plaintiff filed a virtually identical motion for an order clarifying the starting and ending times of his visitations with the children.

[5] The following colloquy took place at the July 15, 1996 short calendar hearing:

"Ms. Whelan [Plaintiff's Counsel]: Just by way of background, Your Honor

reconsideration of that decision and for reargument on the question of whether the court should entertain her motions. On October 15, 1996, the court held reargument on that question, and orally announced its decision to consider the defendant's motions concerning nonfinancial issues in the case,[6] but refusing to consider any motions dealing with financial issues.[7]

issued a memorandum of decision in connection with my client's motion for modification and Your Honor ruled in my client's favor. Your Honor's decision has been appealed, and the reason I point that out to Your Honor is that the vast majority of the motions which are currently pending on the short calendar today tie into Your Honor's memorandum of decision, i.e., whether or not a modification was in order. . . .

"Therefore, I don't know that it would be a proper use of the court's time to hear these motions while the appeal is pending. . . .

"Mr. Leydon [Defendant's Counsel]: Your Honor, Brenden Leydon for the defendant, Susan Ahneman. I didn't realize we were getting into substance, I thought we were going to get a date certain to have all these motions heard.

"The Court: If you have appealed me—

"Mr. Leydon: Well, the appeal, Your Honor, was due to modification of alimony and child support, which none of these motions are directly about. They are about separate elements of the divorce decree which have nothing to do with that.

"Ms. Whelan: Your Honor, I would take issue with that. For example, one of the underlying issues is whether or not my client is in contempt of court for failure to maintain life insurance which, obviously, he doesn't have the financial resources, because he sustained a substantial change in financial circumstances, as Your Honor so found, then certainly I believe that that would be tied in. There are other issues relating to the payment of the children's schooling, education, again that's a financial issue which Your Honor addressed in your memorandum of decision, which is now on appeal.

"The Court: Well, I don't see how you can piecemeal it, counsel. What I found after trial on the merits, all these issues could have been brought up at the time of the hearing. As far as I am concerned that's the law of the case, you are on appeal. It seems to me anything you have to file goes to the Appellate Court who may send it down to me. I am not going to assign a date certain."

[6] The court subsequently scheduled a hearing on December 18, 1996, for motions concerning nonfinancial issues.

[7] At the October 15, 1996 hearing, the trial court stated: "As far as the money issues are concerned, it was my opinion that that was the law of the case that was established by the contested hearing we had over the modification and the contempt. That ruling, I think, would cover these other money issues. As far as visitation or change of name and things of that

On October 21, 1996, the defendant amended her appeal[8] to include a claim challenging the trial court's refusal to consider her motions concerning financial issues. On October 25, 1996, the defendant filed in the Appellate Court, pursuant to Practice Book § 4053,[9] a motion for review of the trial court's refusal to consider her motions. On December 18, 1996, the Appellate Court dismissed the motion for review. Subsequently, citing *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), the Appellate Court, sua sponte, ordered the defendant to show cause why her amended appeal should not be dismissed for lack of a final judgment. The Appellate Court subsequently dismissed the defendant's amended appeal.[10] This certified appeal followed.[11]

---

nature perhaps that's a situation, and frankly I thought they were all money issues, that counsel were raising, all the money issues, that I think should have been raised in your hearing, your contested hearings. It was the piecemeal of the money motions I was objecting to. The other issues regarding nonmonetary aspects of your judgment I think are something that can be addressed separately. . . .

"I will not hear anything on monetary aspects because I think the law of the case was established as a result of the earlier hearing. It's now on appeal. The nonmonetary aspects I will set down for a hearing . . . ."

[8] The October 21, 1996 amendment to the appeal was the defendant's second amendment to the appeal. On September 30, 1996, the defendant had amended her appeal to add a claim challenging the trial court's granting, on September 23, 1996, of the plaintiff's June 27, 1996 motion for attorney's fees for defense of the appeal.

[9] Practice Book § 4053 provides in relevant part: "The [Appellate Court] may, on written motion for review stating the grounds for the relief sought, modify or vacate . . . any order relating to the perfecting of the record for an appeal or the procedure of prosecuting or defending against the appeal, or any order made by the trial court concerning a stay of execution in a case on appeal. . . ."

[10] Although the Appellate Court did not issue a formal opinion explaining the basis for its dismissal of the amended appeal, it is evident from that court's reference to *Curcio* in its sua sponte show cause order, and the parties do not dispute, that the lack of a final judgment for purposes of appeal was the basis for its judgment of dismissal.

[11] On March 24, 1997, the defendant filed a motion to transfer her entire appeal from the Appellate Court to this court. This court denied that motion on April 8, 1997.

I

The defendant claims that the trial court's refusal to consider her motions constituted a final judgment for purposes of appeal, and that, therefore, the Appellate Court improperly dismissed her amended appeal.[12] We agree.

It is well established that "[a]ppeals are permitted only from final judgments." *State* v. *Seravalli*, 189 Conn. 201, 204, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983). "Because [appellate] jurisdiction over appeals, both criminal and civil, is prescribed by statute,[13] [appellate courts] must always determine the threshold question of whether the appeal

---

[12] The defendant also claims that, pursuant to Practice Book § 4006, an amendment to an appeal that arises from postjudgment proceedings in the trial court need not meet the finality requirements. The defendant cites the following in support of her claim: *Hiss* v. *Hiss*, 135 Conn. 333, 335, 64 A.2d 173 (1949) ("[w]here [postjudgment] motions are made after the judgment upon the main issue has been rendered, rulings upon them fall within the scope of the appeal from that judgment; simplicity and expedition justifies that procedure whether or not such rulings would themselves constitute final judgments which would be the basis of an appeal"); *Valluzzo* v. *Valluzzo*, 103 Conn. 265, 266, 130 A. 126 (1925) ("The denial of her motions would not constitute such a final judgment as would of itself form the basis of an appeal. . . . But supplemental proceedings sometimes follow upon a final judgment which may be brought within the scope of the appeal taken from it . . . ." [Citation omitted.]); W. Horton & S. Cormier, Rules of Appellate Procedure (1997 Ed.) § 4006, authors' comments, p. 67 ("[r]ulings to which this section applies do not have to be themselves final judgments," citing *Young* v. *Polish Loan & Industrial Corp.*, 126 Conn. 714, 715, 11 A.2d 395 [1940]). In view of our conclusion that the trial court's refusal to hear the plaintiff's motion was a final judgment for purposes of appeal, we need not consider the effect, if any, of § 4006 nor the cases cited by the defendant on the finality requirement.

[13] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the *final judgment* of the court or of such judge . . . ." (Emphasis added.)

is taken from a final judgment before considering the merits of the claim." *State* v. *Curcio*, supra, 191 Conn. 30. The Appellate Court, therefore, properly inquired whether there was a lack of a final judgment that deprived it of jurisdiction over the appeal of the trial court's refusal to consider the defendant's motions. We conclude, however, contrary to the Appellate Court, that the trial court's refusal to consider the defendant's postjudgment motions on financial issues constituted a final judgment.

It is well established that a ruling by a trial court regarding financial issues in a marital dissolution case— whether it be a pendente lite ruling, a ruling issued in conjunction with a final dissolution judgment or a decision regarding a postjudgment motion—is a final judgment for purposes of appeal. See, e.g., *Serrano* v. *Serrano*, 213 Conn. 1, 566 A.2d 413 (1989) (reviewing trial court ruling regarding allocation of federal income tax dependent child exemption as part of dissolution judgment); *Darak* v. *Darak*, 210 Conn. 462, 556 A.2d 145 (1989) (reviewing trial court's denial of postjudgment motion to modify award of alimony and child support); *Hiss* v. *Hiss*, 135 Conn. 333, 336, 64 A.2d 173 (1949) ("order for the payment of support pendente lite . . . was a final judgment within the appeal statute"). It is also well established that a trial court ruling on a motion for contempt in a marital dissolution action is a final judgment for purposes of appeal. See, e.g., *Cogan* v. *Cogan*, 186 Conn. 592, 442 A.2d 1342 (1982) (reviewing denial of motion that plaintiff be adjudged in contempt for failure to make alimony payments in accordance with dissolution judgment); *Smith* v. *Smith*, 151 Conn. 292, 296, 197 A.2d 65 (1964) (reviewing contempt ruling for failure of defendant to pay alimony pendente lite).

In addition, General Statutes § 51-197a (a) provides in relevant part: "Appeals from *final judgments or actions* of the Superior Court shall be taken to the Appellate Court . . . ." (Emphasis added.)

Thus, if the trial court formally had denied the defendant's motions concerning financial issues, that decision would have constituted a final judgment.

The trial court's decision not to consider the defendant's motions was the functional equivalent of a denial of those motions. Like a formal denial, the effect of the court's decision refusing to consider the defendant's motions during the pendency of the appeal was to foreclose the possibility of relief from the court on those issues, unless and until the resolution of the appeal required further proceedings. Indeed, the refusal to consider a motion is more deserving of appellate review than a formal denial, because the defendant not only has been denied relief; she has been denied the opportunity even to persuade the trial court that she is entitled to that relief. Moreover, at least with respect to a legitimate motion to modify financial aspects of a dissolution judgment, there is an unacceptable possibility that any harm suffered as a result of the court's refusal to consider the motion will never be remediable. The original motion in this case was engendered by a change in the factual circumstances, and further changes may again have occurred by the time the court finally considers the defendant's motions after the appeal is decided.[14]

[14] Although neither party has cited *Tough* v. *Ives*, 159 Conn. 605, 268 A.2d 371 (1970), we discuss it briefly in order to avoid confusion. In *Tough*, this court dismissed, for lack of a final judgment, an appeal of a trial court's failure—twenty-two months after the jury verdict—to render a judgment on the verdict or to rule on a motion to set it aside. Id., 606. *Tough* is distinguishable from the present case.

In the present case, the trial court explicitly and on the record rendered an a priori decision—without even acquainting itself with the subject of the motions—that it would "not hear anything on monetary aspects [of the case]" until resolution of the appeal. In contrast, in *Tough* we were presented merely with an inordinate delay in a trial court's decision regarding a motion. *Tough* v. *Ives*, supra, 159 Conn. 606. Although there is a similarity between the two circumstances, in that in both, the trial court's inaction affects the movant's ability to obtain relief, the rendering by the trial court of an explicit, a priori decision not to consider motions makes the situation in this case more akin to a formal denial than was the case in *Tough*. Moreover, Practice

## II

We next consider whether the trial court had the discretion to refuse to consider the defendant's post-judgment motions concerning financial issues. We consider this issue because it is inextricably linked to the nature of our remand.

Normally, when we conclude that the Appellate Court has improperly failed to reach an issue concerning a decision by the trial court, we remand the case to that court for consideration of the merits of that issue. Under our supervisory powers over proceedings on appeal, however, this court also has the authority to address the subject of the trial court's decision. See Practice Book § 4183; *Matza* v. *Matza*, 226 Conn. 166, 188–89, 627 A.2d 414 (1993) (invoking supervisory powers under § 4183 to address merits of defendant's claim after concluding that Appellate Court should have reached issue).

In the present case, our review of the propriety of the trial court's decision is warranted because a remand to the Appellate Court for review in the normal fashion likely would engender significant confusion. On the one hand, we have characterized the decision of the trial court as the functional equivalent of a formal denial of the motions at issue here, which suggests that, on remand, the Appellate Court should perform its function in accordance with its normal scope of review. See, e.g., *Crowley* v. *Crowley*, 46 Conn. App. 87, 90, 699 A.2d 1029 (1997) ("orders [of trial court in domestic relations case] will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law"). On the other hand, however, because the trial court has not rendered

Book § 211A, adopted after our decision in *Tough*, provides a remedy for inordinate delay in a trial court's decision on a short calendar motion.

any factual or legal conclusions regarding the defendant's motions, the Appellate Court cannot perform that review. Therefore, in order to avoid confusion, we will review the propriety of the trial court's decision ourselves.

In addition, invoking our supervisory powers to reach the merits of the claim concerning the decision of the trial court in the present case "will avoid the necessity of inordinate further delay"; *O'Bymachow* v. *O'Bymachow*, 10 Conn. App. 76, 79, 521 A.2d 599, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987); in the defendant's attempt to obtain consideration of her motions concerning financial issues. Finally, although the propriety of the trial court's decision was not certified for appeal, both parties have addressed the question in their briefs and at oral argument.

Turning to the merits, we agree with the defendant's assertion that the trial court's decision to refuse to consider her motions on financial issues was improper.[15] The simple reason for that conclusion is that the trial court lacked authority to refuse to consider the defendant's motions.

The fact that the defendant had filed an appeal of the trial court's June 7, 1996 ruling on child support and alimony did not deprive the court of continuing jurisdiction over the financial issues. It is well established that a trial court maintains jurisdiction over an action subsequent to the filing of an appeal. Practice Book § 4006 ("[s]hould the trial court, subsequent to the filing of the appeal, make a decision which the appellant desires to have reviewed, the appellant shall

---

[15] The defendant contends that the trial court's decision violated the due process and equal protection provisions of the federal and state constitutions. Because, however, we decide this issue on the basis of case law and rules of practice concerning trial court procedure, we need not consider the defendant's constitutional arguments.

file an amended appeal form in the trial court"); *Mulholland* v. *Mulholland*, 229 Conn. 643, 653, 643 A.2d 246 (1994) (upholding judgment of contempt for failure to fulfill, during pendency of appeal, obligations of child support order that had been reversed on appeal); *Yontef* v. *Yontef*, 185 Conn. 275, 293–94, 440 A.2d 899 (1981) (approving entry of interim orders pending appeal of judgments concerning custody of children in dissolution cases). Moreover, a trial court's postappeal jurisdiction persists regardless of any degree of substantive connection between the postappeal motion and the issue on appeal. See *Clover Farms, Inc.* v. *Kielwasser*, 134 Conn. 622, 623, 59 A.2d 550 (1948) ("trial court had authority to open the judgment . . . and the fact that an appeal had been filed did not prevent such action"); see also *O'Bymachow* v. *O'Bymachow*, supra, 10 Conn. App. 77 ("[i]t has long been settled law that the power of the trial court to open or modify its judgment is not affected by the fact that an appeal from that judgment is pending"). The trial court's jurisdiction over the defendant's motions concerning financial issues continued, therefore, regardless of the fact that such issues also were involved in the defendant's pending appeal of the court's June 7, 1996 ruling.

The plaintiff contends, however, that the trial court's refusal was justified on the ground of efficiency in light of the alleged connection between the issues on appeal and the subject of the defendant's motions. This claim is without merit. Although it may be "efficient" for a trial court not to expend judicial resources on a question that a pending appeal may subsequently render moot, that kind of efficiency has never been considered a justification for a trial court's refusal to consider a question. If anything, considerations of judicial efficiency point in the opposite direction, toward recognizing that a trial court may render moot an appeal by opening, and altering, the judgment that gave rise to it. See

*Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 106, 109, 616 A.2d 798 (1992) (dismissing as moot appeal from trial court judgment because judgment had been replaced by second judgment favorable to appellant after trial court had opened first judgment).

More fundamentally, basic principles of jurisprudence refute the plaintiff's proposition that a trial court has discretion, based on notions of judicial efficiency, to decline to exercise its jurisdiction by refusing to consider certain motions. Courts are in the business of ruling on litigants' contentions, and they generally operate under the "rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the subject-matter . . . and . . . obtains jurisdiction of the person, it becomes its . . . duty to determine every question which may arise in the cause . . . ." (Internal quotation marks omitted.) *Amato* v. *Erskine*, 100 Conn. 497, 499, 123 A. 836 (1924). This general rule is particularly important in the context of marital dissolution cases because of the likelihood of continuing changes in the parties' circumstances requiring continuing dispute resolution by the court.

We recognize that exceptions to the general rule that a trial court must consider and decide on a reasonably prompt basis all motions properly placed before it may exist in an extreme, compelling situation. For example, we do not rule out the possibility that a trial court may have discretion to refuse to entertain or decide motions in order to prevent harassing or vexatious litigation. See *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984) (affirming, in substantial part, District Court's order barring filings by defendant without first obtaining leave of court, vacating order in minor respect, and entering preliminary injunction barring his filings in Court of Appeals without leave of court), aff'd on remand, 763 F.2d 140 (2d Cir. 1985) (affirming District Court's amended order), cert. denied, 474 U.S. 1061, 106 S. Ct.

807, 88 L. Ed. 2d 782 (1986), motions denied, 795 F.2d 9 (2d Cir. 1986) (injunction as to filings in Court of Appeals made permanent), modified sub nom. *Martin-Trigona* v. *Cohen*, 876 F.2d 307 (2d Cir. 1989) (granting leave to appeal where defendant had standing), motions denied sub nom. *In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993) (seeking disclosure of identity of judges ruling on leave to file applications). Likewise, there may be other circumstances in which a trial court properly could refuse to consider certain motions.

Although the defendant filed numerous motions, this record does not support the conclusion that any circumstances existed that justified such a refusal. Indeed, the plaintiff does not allege any. We conclude, therefore, that the decision of the trial court refusing to consider motions concerning financial issues during the pendency of the defendant's appeal of the court's order of June 7, 1996, was improper.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand it to the trial court for prompt resolution of the defendant's motions regarding financial issues.

In this opinion the other justices concurred.