Associate Chief Justice Lee, concurring in part and dissenting in part:
¶114 The majority does an admirable job of bringing order and clarity to a complex case. I agree with and concur in most of the majority opinion and in Justice Himonas's concurrence. Our only point of disagreement stems from their analysis relating to tribal exhaustion and their conclusions affected by that analysis. Unlike the majority and concurrence, I find no basis in federal law for a rule forcing the plaintiffs to "exhaust" their claims by filing suit in tribal court. No party to this case has ever sought to invoke the jurisdiction of the tribal courts. The plaintiffs chose this forum and the defendants apparently agree-they have not initiated a declaratory proceeding in tribal court. And I see no basis for the court's decision to override the parties' choice of this Utah forum.
¶115 The U.S. Supreme Court has imposed an exhaustion requirement in a line of cases in which (a) one of the parties has invoked the jurisdiction of the tribal courts and (b)
*436 another party has filed suit in federal court (which retains appellate jurisdiction over the tribal court). See Iowa Mut. Ins. Co. v. LaPlante , 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) ; Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians , 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). But there is no binding authority extending the exhaustion requirement to a case like this one, in which neither of these elements is met. And I would not adopt such a requirement here.
¶116 Our system yields to parties the general prerogative of choosing an appropriate forum.[1] When the parties file suit in a court that has both subject-matter jurisdiction over the dispute and personal jurisdiction over the parties, our courts have a general duty to exercise that jurisdiction.[2] This is no arbitrary rule. It is a core premise of our judicial system-a premise aimed at protecting the federal constitutional right to due process and the state constitutional right to open access to court. U.S. CONST. amend. V ; UTAH CONST. art. I, § 11.
¶117 These general rules are subject to exceptions. One exception is set forth in the above-cited cases. These cases establish a requirement of exhaustion as a matter of federal Indian law-a rule that "directs a federal court to stay its hand" in the face of a pending tribal court action "in order to give the tribal court a 'full opportunity to determine its own jurisdiction.' " LaPlante , 480 U.S. at 16, 107 S.Ct. 971 (quoting Nat'l Farmers Union , 471 U.S. at 857, 105 S.Ct. 2447 ). This requirement, however, has never been extended to a case like this one. And I see no reason to do so.
¶118 For reasons set forth below I would not hold that the exhaustion rule announced by the U.S. Supreme Court extends to cases in which the parties are litigating their differences in state court and no party has yet invoked the jurisdiction of a tribal court. First, I see no basis for the conclusion that the principles set forth in LaPlante apply with equal force in a case involving the interplay between tribal courts and state courts. Second, and in any event, I see no basis for extending the LaPlante doctrine of exhaustion to a case in which there is no pending proceeding in the tribal forum. In the absence of a binding federal rule I would approach the question presented as a matter of comity addressed to our common law authority.[3] And under that authority I would conclude that our courts should stay our exercise of jurisdiction only after one of the parties has invoked the jurisdiction of the tribal courts.
I
¶119 I find no basis in federal law for a rule of exhaustion that is binding on state courts. A few lower courts have held that the logic and some dicta in LaPlante and National Farmers Union suggest that the exhaustion principle ought to extend to state court proceedings.[4] But the U.S. Supreme *437 Court has never considered the question before us.[5] Its cases, to date, have all involved the interplay between actions filed in federal court and competing cases filed in tribal court.[6]
¶120 Justice Himonas cites Nevada v. Hicks , 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), and LaPlante , 480 U.S. at 16, 107 S.Ct. 971, for the proposition that the U.S. Supreme Court's "tribal exhaustion rule" governs " 'the relationship between tribal courts and state and federal courts.' " Supra ¶ 93 (quoting Hicks , 533 U.S. at 398, 121 S.Ct. 2304 ). But the cited language from Hicks comes from Justice O'Connor's concurring opinion. And neither case is addressed to the question of relevance here-of whether federal law requires state courts to stay their hand in anticipation of a tribal court proceeding that might be filed .[7] That is also true of every other tribal court exhaustion case decided by the Supreme Court. So any broad language in the court's opinions, like that in LaPlante , is pure dicta. See LaPlante , 480 U.S. at 16, 107 S.Ct. 971 (speaking of an exhaustion rule applying to "any nontribal court").
¶121 And there is reason to believe that the broad dicta should not extend to a case like that presented here. Indeed the terms and structure of the LaPlante opinion cut against this extension. LaPlante speaks of "exhaustion." Exhaustion, moreover, is a principle that regulates the timing of proceedings in tribunals that operate in a hierarchical relationship.[8] We speak of exhaustion of administrative remedies, for example, as a rule requiring a party challenging the actions of an administrative agency to raise and resolve its claims in the administrative agency before it may raise them in a judicial proceeding.[9] Exhaustion in habeas corpus proceedings is similar. Petitioners in state custody must exhaust available state court procedures before pursuing review in federal court.[10]
¶122 The exhaustion question presented in LaPlante is along these same lines. In holding that the plaintiff was required to "exhaust available tribal remedies" before pressing *438 its suit in federal court, the court also recognized that if the tribal courts concluded that they had jurisdiction the parties retained the right to "challenge that ruling" by seeking direct review in an action filed "in the [federal] District Court." 480 U.S. at 19, 107 S.Ct. 971. This is the notion of "exhaustion"-the requirement of completing litigation filed in a lower tribunal before seeking ultimate review in a higher one.
¶123 "Due to th[e] relationship" between tribal and federal courts,[11] a plaintiff may not file an action arguably subject to the jurisdiction of the tribal courts "directly in federal court ... without first exhausting such recourse as is available in Indian courts." Astorga v. Wing , 211 Ariz. 139, 118 P.3d 1103, 1107 (Ariz. Ct. App. 2005). This is the essence of the LaPlante rule of exhaustion. And it is not implicated in a case in which there is no hierarchical relationship between the two sovereign courts-and thus no right of direct review.[12] See Astorga, 118 P.3d at 1107 (concluding that the "principle of exhaustion" announced in LaPlante "does not apply" to a case filed in state court).[13]
¶124 Justice Himonas says that the applicability of the LaPlante principle of exhaustion to state court proceedings is resolved by "fundamental principles of Indian law" announced by the Supreme Court and reiterated in federal statutes. Supra ¶ 96. I disagree. It should first be reiterated that there is no controlling authority on this issue. The Supreme Court has never considered the important question presented here.
¶125 Granted, the court has spoken generally about the federal " 'policy of leaving Indians free from state jurisdiction and control.' " Supra ¶ 96 (quoting Rice v. Olson , 324 U.S. 786, 789, 65 S.Ct. 989, 89 L.Ed. 1367 (1945) ). But these generalities tell us nothing about the key questions presented-as to how far that policy goes and how to balance it against countervailing considerations. This case presents fundamental policy questions of sovereignty and concurrent jurisdiction. Those questions are not resolved by precedent. And in the absence of controlling federal precedent this is a matter of first-impression for our decision.[14]
*439 ¶126 The cited federal statutes-the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq. , and the Major Crimes Act, 18 U.S.C. § 1153 et seq . -do not establish federal law requiring state courts to stay our exercise of jurisdiction in anticipation of a future-filed action in the courts of an independent (Indian) sovereign. Indeed these statutes seem to me to underscore the lack of any such federal rule. If Congress meant for both federal and state courts to yield to tribal courts in every circumstance where tribal courts have a colorable claim of jurisdiction, there would be no reason for statutes giving tribal courts exclusive jurisdiction. These statutes also show that Congress has the power and ability to give tribal courts jurisdiction when it chooses to do so. See also Hicks , 533 U.S. at 365, 121 S.Ct. 2304 ("The States' inherent jurisdiction on reservations can of course be stripped by Congress.").
¶127 There is a difference between federal policy and federal law . Substantive federal law is generally made by Congress.[15] Here there is no applicable law. And the absence of a statute restricting the exercise of our jurisdiction emphasizes the need for us to address the matter head-on.
¶128 Absent a controlling statute or binding precedent from the U.S. Supreme Court, it is incumbent on us to decide how to balance the needed deference to the sovereignty and jurisdiction of the tribal courts. See Drumm v. Brown , 245 Conn. 657, 716 A.2d 50, 63 (1998) (concluding that even if the Supreme Court's precedents establish "only a federal court procedural rule," that court may look to similar policies in "adopt[ing] [a] doctrine for the courts of this jurisdiction").[16] I would do so here.
¶129 Thus, I would not find that federal precedent or statutes urge us to follow the framework set forth in LaPlante . But I would adopt a rule of exhaustion as a matter of comity under Utah common law-a rule that would call for exhaustion in the face of a pending tribal court proceeding, but not before such a case is actually filed.[17]
II
¶130 Even assuming that the LaPlante line of cases applies to state courts, I would not interpret those cases to require exhaustion in the absence of a pending case filed in tribal courts. I agree with the Connecticut Supreme Court's analysis of this issue. See Drumm v. Brown , 245 Conn. 657, 716 A.2d 50, 64 (1998) (concluding that "exhaustion is not required" under LaPlante "in the absence of a pending action in the tribal court").
¶131 Again there is no direct holding from the U.S. Supreme Court on this point. "[I]n both cases in which the Supreme Court has held that exhaustion was necessary, namely National Farmers Union Ins. Cos. and Iowa Mutual Ins. Co. [v. LaPlante ], a proceeding was already pending in the tribal court." Id .
¶132 The terms and structure of the Supreme Court's opinions strongly suggest "that the court contemplated application of *440 the requirement only when a parallel proceeding was pending in the tribal court." Id . The National Farmers Union case, for example, "stated that the 'policy of tribal self-government and self-determination ... favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.' " Id . (quoting Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians , 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) ) (emphasis altered). And "[t]his narrow language presupposes an ongoing proceeding in the tribal court." Id .
¶133 The notion of deference to a "forum whose jurisdiction is being challenged " is reflective of a rule that applies in the face of an existing court proceeding. And one of the exceptions identified in National Farmers Union is along the same lines: The exception says that exhaustion is not "required" where the tribal suit "is patently violative of express jurisdictional prohibitions." 471 U.S. at 856 n.21, 105 S.Ct. 2447 (emphasis added); see also Drumm , 716 A.2d at 64 (making this point).
¶134 There is further language in LaPlante that reinforces this view. As the Connecticut Supreme Court noted, LaPlante mandates that " 'federal courts should not intervene ' in tribal court proceedings." Drumm , 716 A.2d at 64 (quoting Iowa Mut. Ins. Co. v. LaPlante , 480 U.S. 9, 17, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) ) (emphasis in Drumm )). This "reinforces the impression that the court contemplated application of the rule specifically where tribal court proceedings have commenced." Id .Intervention is not possible without a pending action. And that suggests that the LaPlante rule of exhaustion is implicated in the presence of an actual pending proceeding in tribal court. See also id . (quoting Granberry v. Greer , 481 U.S. 129, 131 n.4, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), for the proposition that the LaPlante principle of exhaustion was triggered by a "parallel tribal court proceeding"); id . at 65 (quoting Strate v. A-1 Contractors , 520 U.S. 438, 448, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), speaking of "an exhaustion rule allowing tribal courts initially to respond to an invocation of their jurisdiction").[18]
¶135 Justice Himonas resists this conclusion on the ground that LaPlante announces a "rule of exhaustion , not abstention." Supra ¶ 106. But the dichotomy set up by Justice Himonas is overstated. The principle of abstention is not limited to the notion of "balanc[ing] multiple factors" such as "judicial economy concerns and the avoidance of piecemeal litigation." Supra ¶ 106. Abstention is simply the idea of a court of one sovereign staying its hand in the face of the exercise of jurisdiction by another. See Younger v. Harris , 401 U.S. 37, 43, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (restraining federal courts to allow "state courts to try state cases free from interference by federal courts"). Abstention, just as exhaustion, is based on concerns regarding comity and deference to ongoing judicial proceedings. And courts have no discretion with some forms of abstention, as in Younger abstention, but must dismiss or stay the federal suit. Id. (holding that absent several narrow exceptions, federal courts must abstain from enjoining state court criminal proceedings). Exhaustion and abstention, then, are closely related doctrines, and speaking of this as an exhaustion case rather than an abstention case does not tell us the answer to the question presented.
*441 ¶136 LaPlante , in fact, speaks of its "rule" as a form of "abstention." It does so implicitly in its prohibition on intervention in a tribal court action and its mandate for deference to a current "challenge to [the tribal court's] jurisdiction." LePlante , 480 U.S. at 16, 107 S.Ct. 971 (internal quotation marks omitted). And it even does so explicitly-in stating that the LaPlante "rule is analogous to principles of abstention articulated in Colorado River Water Conservation Dist. v. United States , 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)." Id. at 16 n.8, 107 S.Ct. 971.
¶137 The substance of the LaPlante court's analysis also reinforces this view. Again I agree with the Connecticut Supreme Court's view of the matter. The LaPlante exhaustion rule can easily be understood to be limited to a case in which there is a live, pending proceeding in tribal court. That conclusion, in fact, is reinforced by the specific policy considerations identified in LaPlante and National Farmers Union . See Drumm , 716 A.2d at 65 (concluding that the concerns "upon which the doctrine is based [are] most pressing when a parallel proceeding is pending in the tribal court").
¶138 The first consideration identified in LaPlante is the "federal policy supporting tribal self-government," which "directs a federal court to stay its hand in order to give the tribal court 'a full opportunity to determine its own jurisdiction.' " LaPlante , 480 U.S. at 16, 107 S.Ct. 971 (citation omitted). The National Farmers Union formulation of this policy is similar. There the court spoke of the need to allow the "forum whose jurisdiction is being challenged" to have the "first opportunity to evaluate the factual and legal bases for the challenge." 471 U.S. at 856, 105 S.Ct. 2447. As noted above, both of these statements of policy presuppose the pendency of a parallel proceeding in tribal court. Tribal courts are not charged with assessing their own jurisdiction on their own accord-without a case having been filed by the parties. So the directive for a nontribal court to "stay its hand" to "give the tribal court a full opportunity to determine its own jurisdiction" makes no sense unless and until a parallel tribal proceeding is actually filed.
¶139 As the Connecticut Supreme Court put it, "the risk that adjudication by the nontribal forum will impair the tribal court's authority" is implicated "where proceedings arising from the same transactions and occurrences, and involving substantially the same issues and parties, are pending in both a tribal and nontribal court." Drumm , 716 A.2d at 65. But "the impact on a tribal court's authority of a nontribal court's adjudication of a matter over which the tribal court could, but has not, exercised jurisdiction" is unclear. Id ."Any such effect is speculative and indirect, consisting merely of a lost opportunity or a potential unrealized." Id .
¶140 National Farmers Union also raised a concern about the "procedural nightmare" that would ensue if an "underlying tort action" is allowed to proceed with a pending tribal proceeding hanging in the balance. 471 U.S. at 853, 856, 105 S.Ct. 2447 (discussing the policy of the advancement of the "orderly administration of justice"). The court expressed discomfort with the potential procedural complexities arising where a defendant is allowed to challenge tribal court jurisdiction first in federal court.[19] Id. at 856, 105 S.Ct. 2447. But again this policy is only clearly implicated in the face of a pending tribal proceeding. There is no "procedural nightmare" without two pending, overlapping cases. Indeed the majority's holding here-its requirement of a separate filing in a tribunal of a separate sovereign-itself interferes with the "orderly administration of justice." The parties to this case are apparently content to have their differences resolved in our Utah courts. The plaintiffs filed the case here *442 and no defendant saw fit to file a separate (declaratory) proceeding in tribal court. Unless and until that happens, there is no "procedural nightmare" and no interference with the "orderly administration of justice."
¶141 That also holds for the third policy identified in the National Farmers Union -the concern that a rule of exhaustion "will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction," and "provide other courts with the benefit of their expertise in such matters in the event of further judicial review." Id . at 857, 105 S.Ct. 2447. The majority says that "forcing Harvey to litigate in tribal court" will "provide[ ] clarity to the parties and any reviewing court on how the tribe views its own jurisdiction." Supra ¶ 51 (emphasis added). Perhaps that is true. But National Farmers Union does not speak of "forcing" anyone to file a separate action in tribal court. It is concerned with allowing tribal courts to "explain" their "basis for accepting jurisdiction ." 471 U.S. at 857, 105 S.Ct. 2447 (emphasis added). And the notion of acceptance of jurisdiction presupposes a suit filed in tribal court at the voluntary instance of the parties.
¶142 The rule adopted by the majority seems to me to get things backwards. By telling parties who were content to resolve their grievance in our courts that they must pursue a parallel action in the courts of a separate sovereign, the court is neither advancing the "orderly administration of justice" nor furthering Indian "self-governance." The Indian defendants named in this suit are also citizens of the State of Utah. See Meyers v. Bd. of Educ. of San Juan Sch. Dist. , 905 F.Supp. 1544, 1564 (D. Utah 1995) ("[O]f course, on-reservation Indians are citizens of the state within which they reside."). As such they are entitled to access to our courts to resolve their differences with the plaintiffs. By directing them to file a declaratory suit in tribal court-a suit they have heretofore declined to file-we are not respecting their right of self-governance. We are overriding it.
¶143 This is a separate basis for the holding of the Connecticut Supreme Court in Drumm . There the court emphasized that " '[c]ourts are in the business of ruling on litigants' contentions, and they generally operate under the rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the subject-matter ... and ... obtains jurisdiction of the person, it becomes its ... duty to' adjudicate the case before it." 716 A.2d at 65 (quoting Ahneman v. Ahneman , 243 Conn. 471, 706 A.2d 960, 966 (1998) (alternations in original)). "[T]his rule is not absolute." Id ."It may be relaxed, however, only 'in an extreme, compelling situation,' " as where "a proceeding arising out of the same transactions and occurrences, and involving substantially the same issues and parties, is pending before a tribal court." Id . (citation omitted). In that instance a rule of exhaustion makes sense, in light of the "likelihood that state court adjudication will interfere with the proper authority of the tribal court over reservation affairs, in conflict with the federal policy supporting tribal self-government and self-determination." Id ."[W]here the tribal court potentially has jurisdiction over a matter," however, "but no proceeding is pending before it, the attenuated effect on the tribal court's authority of a nontribal court's adjudication of the matter is not sufficiently compelling to outweigh the general obligation upon a court to exercise its jurisdiction when it has been properly invoked." Id . at 65-66 (emphasis added).
¶144 I would so hold. I would conclude that there is no binding federal law requiring the parties to this proceeding to file an action in tribal court. And unless and until such an action is filed, I would defer to the parties' choice of the Utah courts as the forum for the resolution of their dispute. See id. at 66 (noting that some of the parties in that case had filed a "tribal court action during the pendency of th[e] appeal," triggering a rule of "exhaustion" as to those parties).
III
¶145 Perhaps in time the U.S. Supreme Court will extend its precedents and impose a requirement of exhaustion in a case like this one. Or maybe Congress will enact a law restricting the jurisdiction of the state courts in cases where the parties could file in tribal *443 court. But in the absence of any such statute or precedent addressed to the questions of sovereignty and concurrent jurisdiction at issue here, I would not embrace a requirement of exhaustion of tribal remedies in a case in which no one has expressed an interest in seeking such a remedy. We owe it to the parties who invoke our jurisdiction to resolve the dispute that is presented for decision. And I would find that presumption rebutted only in case of a direct conflict between an action filed in our courts and a parallel proceeding pending in tribal court.

A person is also necessary under rule 19 "if in the person's 'absence complete relief cannot be accorded among those already parties' ... [or] the person ... claims an interest in the action and her absence would 'leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.' " Supra ¶ 35 (quoting Utah R. Civ. P. 19(a)(1) & (2)(ii)). I have no concerns with the majority's analysis of these two prongs of rule 19(a).

To be sure, defendants in such suits could conceivably remove to federal court and then seek application of the tribal exhaustion rule. See Iowa Mut. Ins. Co. v. LaPlante , 480 U.S. 9, 14-16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (tribal exhaustion rule applies to diversity proceedings). But this underscores the logic of applying the tribal exhaustion rule in state courts. It makes little sense to impose the extra procedural hurdle of removal in order to reach the same result-stay of nontribal proceedings under the tribal exhaustion doctrine. Moreover, there will presumably remain some nonremovable cases filed in state court to which the tribal exhaustion rule would uncontroversially apply in federal court. But there is no reason to think such cases are less worthy of tribal exhaustion than removable cases. So declining to apply the tribal exhaustion rule to this random subset of cases would ultimately work an arbitrary, and therefore unacceptable, result. And most importantly, this purpose would be frustrated by a scheme that relies on litigants to remove to federal court to trigger the tribal exhaustion rule.

In the dissent's view, requiring litigants, including Indian litigants, to file in tribal court does not "respect their right of self-governance"; it "overrid[es] it." Infra ¶ 142. This is ultimately just a quip-it trades on an ambiguity in the notion of "self-governance." The "self-governance" that the tribal exhaustion doctrine seeks to promote is the self-governance that comes from encouraging the development of tribal judicial institutions; it is not the policy of allowing litigants to choose their own forum. See, e.g. , Smith v. Moffett , 947 F.2d 442, 444 (10th Cir. 1991) ("The fact that Smith apparently has not yet presented his case to a tribal court does not diminish the comity considerations present in this case."); Wellman v. Chevron U.S.A., Inc. , 815 F.2d 577, 579 (9th Cir. 1987) (declining to allow Indian plaintiff to file suit in federal district court, instead of tribal court, because both Indian and non-Indian plaintiffs are "limited to tribal court as the forum of first recourse"). In any event, by seeking to dismiss this action on the basis that the plaintiffs have not exhausted their tribal remedies, the Indian defendants here have expressed their preference for having this dispute adjudicated in available tribal forums. Memorandum in Support of Motion to Dismiss by Tribe and UTERO Officials at 13-14.

I accessed the Ute Law and Order Code through the Native American Rights Fund's National Indian Law Library. NARF's website indicates that the code was last amended in 2013, but it also includes, as a disclaimer, that while "every effort is made to present current and accurate information, if you need an official version of the tribe's laws, please contact the tribe." Native American Rights Fund , http://www.narf.org/nill/codes/ute_uintah_ouray/[https://perma.cc/8YXR-4HLZ]. The district court may wish to verify that section 1-2-3(5) is contained in the current, operative version of the Law and Order Code.

See Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd. , 2014 UT 13, ¶¶ 30, 33, 325 P.3d 70 (recognizing that "[a]s a general matter, a plaintiff's choice of forum is entitled to deference" so long as the plaintiff's choice of forum "was motivated by legitimate reasons"); Piper Aircraft Co. v. Reyno , 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum ....").

See Meyer & Assocs. , 992 So.2d at 450 (noting that "[t]he United States Supreme Court has never held that the exhaustion of tribal remedies doctrine applies to the states").

See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians , 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (asserting that "the forum whose jurisdiction is being challenged [shall have] the first opportunity to evaluate the factual and legal bases for the challenge"); Iowa Mut. Ins. Co. v. LaPlante , 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (emphasizing the need to avoid "direct competition with the tribal courts"); Strate v. A-1 Contractors , 520 U.S. 438, 448, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (summarizing U.S. Supreme Court precedent as establishing "an exhaustion rule allowing tribal courts initially to respond to an invocation of their own jurisdiction").

Hicks was a declaratory judgment action filed in federal court by the State of Nevada. 533 U.S. at 357, 121 S.Ct. 2304. The State was challenging the jurisdiction of a tribal court (in a proceeding pending there) over tribal tort and federal civil rights claims. Id.

Cf. Sarei v. Rio Tinto, PLC , 550 F.3d 822, 832 (9th Cir. 2008) (en banc) (explaining that exhaustion requires a plaintiff to "obtain a final decision of the highest court in the hierarchy of courts in the legal system at issue"); Priester v. Baltimore Cty. , 232 Md.App. 178, 157 A.3d 301, 310 (2017) (describing exhaustion in administrative law as "requir[ing] a grievant to invoke and pursue the administrative process until he or she receives a final decision from the agency at the utmost level of the administrative hierarchy").

See Woodford v. Ngo , 548 U.S. 81, 88-89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.") (citation omitted).

28 U.S.C. § 2254(b)(1)(A) ; Davila v. Davis , --- U.S. ----, 137 S.Ct. 2058, 2064, 198 L.Ed.2d 603 (2017) ("First, a state prisoner must exhaust available remedies before presenting his claim to a federal habeas court.").

The notion of a hierarchical relationship between the tribal and federal courts is no artifact of "insensitiv[ity]" to the "unique status and history" of Indian tribes. Supra ¶ 103. It is a simple description of a controlling premise of federal law. Thus, tribes are admittedly "separate sovereigns" that pre-dated the U.S. Constitution. Supra ¶ 104 (quoting Michigan v. Bay Mills Indian Cmty. , --- U.S. ----, 134 S.Ct. 2024, 2030, 188 L.Ed.2d 1071 (2014) ). And in that sense an Indian tribe is certainly distinct from an administrative agency and even a state. But tribal courts and agencies share at least one common characteristic-their decisions on federal issues are subject to direct review in federal court. This puts tribal courts and agencies on parallel footing in their resolution of federal questions. And because tribal jurisdiction is a federal question, see Nat'l Farmers Union , 471 U.S. at 857, 105 S.Ct. 2447, the tribal courts are subordinate to federal courts on questions of jurisdiction. They have no such relationship with state courts.

"[T]he balance between state and tribal causes of action is not a jurisdictional see-saw, rising and falling in balanced harmony. Rather, determinations of jurisdictional propriety derive from larger notions of shared autonomy, co-existent sovereignty, and the sometimes overlapping boundaries of governmental authority-both geographic and with respect to tribal membership and property ownership." Hinkle v. Abeita , 283 P.3d 877, 884 (N.M. Ct. App. 2012).

The point is not "to place state courts in a superior position to federal courts in cases that implicate tribal jurisdiction." Supra ¶ 97 (emphasis added). It is to account for the inferior position that we occupy by virtue of our lack of any direct review authority over tribal court decisions.
I see no reason to expect that the approach that I advocate will prompt plaintiffs "overwhelmingly" to avoid the federal forum and file in state court instead. See supra ¶ 97. And even if some plaintiffs migrate to state court, that will not at all "subvert the federal policy of encouraging the development of tribal court systems." Supra ¶ 97. The policy of "[p]romot[ing] ... tribal self-government," LaPlante , 480 U.S. at 15, 107 S.Ct. 971, is advanced even under the regime that I have in mind-a regime in which the state courts defer to tribal courts as soon as a party invokes their jurisdiction. Indeed I believe that is precisely the regime that the LaPlante line of cases has in mind even for cases pending in federal court. See infra Part II.

I suppose it's possible, as the Connecticut Supreme Court has indicated, that the U.S. Supreme Court could be deemed to have announced "substantive" federal common law that is "binding in state courts pursuant to the supremacy clause of the federal constitution." Drumm , 716 A.2d at 62. But I am unsure of the legal basis for the court to impose such a "substantive" rule by means of "common law." That strikes me as the domain of Congress. In any event, however, the court has not in fact announced any common law rule that is applicable here. If and when it does so we will be bound by its precedent. But until then we treat the question of any limits on the exercise of our state-court jurisdiction to be a matter of state law.

See, e.g. , U.S. Const. art. I, § 8 (delegating the power to regulate commerce to Congress, to tax and spend for the general welfare, to enforce the provisions of the civil war amendments, and "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its specific powers).

See also Meyer & Assocs. , 992 So.2d at 446 (declining to extend the tribal exhaustion doctrine to state court); Maxa v. Yakima Petroleum, Inc ., 83 Wash.App. 763, 924 P.2d 372 (1996) (same); Michael Minnis & Assocs. v. Kaw Nation , 90 P.3d 1009 (Okla. Civ. App. 2003) (same).

Justice Himonas notes that defendants in these types of suits "could conceivably remove to federal court and then seek application of the tribal exhaustion rule." Supra ¶ 97 n.21. In Justice Himonas's view this supports the extension of the exhaustion rule to a case like this one because requiring removal to federal court would "impose the extra procedural hurdle of removal in order to reach the same result." Supra ¶ 97 n.21. Removal to federal court is unnecessary, however. The defendant could invoke the tribal court's jurisdiction by filing a declaratory judgment action-thereby creating a pending suit in tribal court. And Utah courts would then require exhaustion of the pending suit in tribal court as a matter of comity.

The reasoning in U.S. Supreme Court abstention cases also supports this position. Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), prohibited federal courts from enjoining pending state court criminal proceedings, and Samuels v. Mackell , 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), prohibited federal courts from providing declaratory relief to plaintiffs who are subject to corollary state criminal prosecution. The Younger court's reasoning rested on "proper respect for state functions" and on "not unduly interfer[ing] with the legitimate activities of the States." 401 U.S. at 44, 91 S.Ct. 746. But federal courts must proceed in the absence of a pending state action because the same policy considerations are not present. Steffel v. Thompson , 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (noting that a federal court's proceeding in the absence of a corollary state court proceeding cannot "be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles"). Similarly, when neither party has invoked the tribal court's jurisdiction, a state court exercising its jurisdiction cannot be viewed, as Justice Himonas suggests, as intruding on "tribal self-government and self-determination." See supra ¶ 97 (citing LaPlante , 480 U.S. at 15, 107 S.Ct. 971 ).

The procedural nightmare that concerned the court arose in a case in which the defendant challenged tribal jurisdiction first in federal court without answering the complaint in tribal court. That led to a series of inconsistent decisions: The tribal court entered a default judgment, the federal district court entered a permanent injunction against the tribal court proceedings, and the federal appellate court reversed the entry of the injunction. Nat'l Farmers Union , 471 U.S. at 847, 856, 105 S.Ct. 2447. This sort of "procedural nightmare" is not at all presented here. Because no tribal suit has yet been filed, this case is simple and straightforward as it now stands.