LORRAINE PARROTTA *v.* MICHAEL PARROTTA
(AC 31085)

Bishop, Gruendel and Harper, Js.

Argued December 10, 2009—officially released February 23, 2010

*Kimberly A. Knox*, with whom were *Kenneth J. Bartschi* and, on the brief, *Karen L. Dowd* and *Amy L. Greenberg*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom was *Wendy Dunne DiChristina*, for the appellee (defendant).

*Michelle S. Cruz* and *Hakima Bey-Coon* filed a brief for the office of the victim advocate as amicus curiae.

*Opinion*

BISHOP, J. In this marital dissolution case, the plaintiff, Lorraine Parrotta, appeals from the order of the trial court lifting, in part, the automatic orders[1] that apply to all dissolution cases and allowing the defendant, Michael Parrotta, to expend $100,000 for attorney's fees to defend himself in a criminal matter

---

[1] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . .

"(1) Neither party shall sell, transfer, encumber . . . conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action . . . ."

involving an alleged assault on the plaintiff.[2] Because we conclude that the order in question is not an appealable final judgment, we dismiss the appeal.[3]

The following procedural history is pertinent to our discussion. On December 3, 2008, the plaintiff filed a complaint seeking dissolution of her marriage to the defendant, a division of the marital property and debts, and orders regarding child support and custody as to the parties' minor child.[4] On April 3, 2009, the defendant was arrested and charged with attempt to commit murder and assault in the first degree after he allegedly stabbed the plaintiff repeatedly. As noted, the defendant remains in the custody of the commissioner of correction pending trial.

On April 6, 2009, the plaintiff filed an application for an ex parte temporary injunction pendente lite, seeking an order prohibiting the defendant from withdrawing funds from brokerage accounts for fear that he would use those funds to post bond in the criminal cases. The

[2] The defendant was arrested on April 3, 2009, in docket number CR-09-0166567-T, in which he is charged with attempt to commit murder in violation of General Statutes § 53a-54a and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). Both charges relate to an alleged assault by the defendant on the plaintiff in which he is alleged to have stabbed her several times. The defendant was subsequently arrested on April 7, 2009, in docket number CR-09-0166604-T, in which he is charged with violating a standing criminal restraining order in violation of General Statutes § 53a-223a and criminal possession of a weapon in violation of General Statutes § 53a-217. These charges, as well, relate to the defendant's alleged conduct toward the plaintiff. In conjunction with these charges the defendant is presently incarcerated, held in lieu of posting bonds in the aggregate amount of $1.5 million.

[3] On appeal, the plaintiff claims that the court's order was improper in that (1) it constituted a distribution of marital property that is permitted only at the time the marriage is dissolved pursuant to General Statutes § 46b-81 and (2) the court did not make any inquiry or finding as to the reasonableness of the amount sought by the defendant. Because we conclude that we do not have jurisdiction to hear this appeal, we do not reach these claims.

[4] The defendant subsequently filed a cross complaint seeking similar relief.

court, *Schofield, J.*, granted that motion ex parte on April 6, 2009.[5]

On April 16, 2009, the defendant filed a motion for transfer, in which he sought a change of venue of this action to the criminal section of the Superior Court for the limited purpose of determining his rights to secure legal counsel and to prepare for his defense in the criminal proceedings. On April 29, 2009, the court, *Schofield, J.*, heard argument on the defendant's motion to transfer and, treating it as a motion for modification of the automatic orders, ordered the sum of $100,000 to be wired from a brokerage account in the defendant's name directly to the account of his criminal defense attorney, to be used for legal fees and expert witness fees in conjunction with the pending criminal charges. The court also ordered that no portion of those funds could be used for the posting of the defendant's bail or bond. Finally, the court indicated that the $100,000 sum would be considered a draw against the defendant's share of the equitable distribution of property at the time of the final hearing in the dissolution action. This appeal followed.

Before examining the plaintiff's claims on appeal, we must first determine whether we have jurisdiction. It is axiomatic that the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § 61-1; see *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 793, 967 A.2d 1 (2009). Thus, as a general matter, "an interlocutory ruling may not be appealed pending the final disposition of a case." *Hopkins* v. *O'Connor*, 282 Conn. 821, 827, 925 A.2d 1030 (2007). Our Supreme Court has, however, determined that certain interlocutory orders may be treated as final

---

[5] In the absence of an objection by the defendant, the court, *Malone, J.*, subsequently granted that injunction on May 15, 2009.

judgments for purposes of appeal. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id.

When the plaintiff filed this appeal, the court had not rendered judgment on her complaint for dissolution or the defendant's cross complaint.[6] Nor had the court assigned to either party any part of the estate of the other as the court is permitted to do, by statute, only at the time of the final hearing.[7] We must, therefore, determine whether the court's order modifying the automatic orders to give the defendant permission to expend funds in his own name, although interlocutory, is a final judgment for purposes of appeal. The plaintiff contends that there is an appealable final judgment pursuant to the second prong of *Curcio*. We are not persuaded.

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final

---

[6] Nor, to our knowledge, has this matter gone to final judgment since the filing of the appeal.

[7] General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree annulling or dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." Although the court order gave the defendant access to funds in his own name, part of his estate, it did not amount to a transfer from one spouse to another.

judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled. For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. Whe[n] a [discretionary] decision has the effect of not granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226–27, 901 A.2d 1164 (2006).

In support of her position, the plaintiff cites cases in which our Supreme Court has held that pendente lite orders in marital dissolution cases are final judgments. Indeed, our Supreme Court has made the broad assertion that "a ruling by a trial court regarding financial issues in a marital dissolution case—whether it be a pendente lite ruling, a ruling issued in conjunction with a final dissolution judgment or a decision regarding a postjudgment motion—is a final judgment for purposes of appeal." *Ahneman* v. *Ahneman*, 243 Conn. 471, 479, 706 A.2d 960 (1998).[8] In *Ahneman*, the court was confronted with a situation in which a party had filed an

---

[8] In support of this conclusion, the *Ahneman* court made specific reference to other cases regarding a trial court's ruling regarding allocation of a federal income tax dependent child exemption as part of a final judgment, a trial

appeal from final judgment financial orders. While that appeal was pending, a party filed additional motions regarding financial issues. The trial court refused to respond to these motions. At issue in an amended appeal was whether the court's refusal was a final order from which the party could take an appeal. The Supreme Court found that the court's refusal to hear the party's motions was tantamount to a denial of the motions. Thus, the court concluded that the "refusal" was a final order. Id., 480.

Although we acknowledge that our decisional law makes this a close question, we do not believe that either this court's or the Supreme Court's prior treatment of interlocutory financial orders in marital dissolution cases as final orders determines the issue at hand. We believe, however, that prior cases dealing with the question, generally, of the finality of interlocutory orders in marital dissolution cases guide our conclusion that the order at hand is not a final judgment.

In general, the jurisprudence finding finality in pendente lite orders rests on the notion that the orders under scrutiny have concluded a party's rights with respect to the issue at hand because the court is not able, at the time of the final judgment, to provide any remedial relief in regard to the pendente lite orders. In *Hiss* v. *Hiss*, 135 Conn. 333, 336, 64 A.2d 173 (1949), the Supreme Court concluded that an interlocutory order requiring the husband to make pendente lite payments to the wife for the support of herself and her children was an appealable final judgment because the husband would have no right to be reimbursed even if the trial

court's denial of a postjudgment motion to modify alimony and child support, an order for the payment of support pendente lite and a ruling on a motion for contempt. *Ahneman* v. *Ahneman*, supra, 243 Conn. 479. Thus, in making this broad statement, it is apparent that the court did not contemplate the present circumstance in which the court granted partial relief from the automatic orders.

court ultimately rendered a judgment in his favor. The reasoning behind the immediate appealability of pendente lite financial orders related to alimony or child support is that such orders provide support during the pendency of an action but that any funds spent as a result of these orders are not subject to reimbursement, as they merge into the final dissolution judgment. Id. As a result, the rights of the parties to the funds are concluded so that further proceedings cannot affect them.[9] Id. If such orders were not appealable prior to the entry of judgment, they could not be reviewed at all, with the result that no redress could be had for funds already expended. In other words, once a final judgment enters, the pendente lite orders cease to exist because their purpose has been extinguished at the time the dissolution judgment is entered. *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004); *Connolly* v. *Connolly*, 191 Conn. 468, 479–80, 464 A.2d 837 (1983).

The plaintiff claims, nevertheless, that the court's order in this instance effectively determined her rights with respect to a portion of the defendant's estate and that, because the defendant has been permitted to expend those funds, the funds are irretrievably lost. Our Supreme Court has stated that "where an order requires monetary payments that are irretrievable, so that there is no right of reimbursement . . . the order is immediately appealable" because it concludes the

---

[9] Furthermore, offsetting a pendente lite alimony or child support payment when fashioning financial orders at the time the marriage is ultimately dissolved would amount to a retroactive modification of those orders in contravention of General Statutes § 46b-86 (a). See General Statutes § 46b-86 (a) ("[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50").

rights of the parties so that further proceedings cannot affect them. *Goodson* v. *State*, 228 Conn. 106, 113–14, 635 A.2d 285 (1993). In *Goodson*, the court held that the defendant could not recoup wages paid to the plaintiff as a result of a reinstatement order even if it ultimately prevailed on the merits of the underlying grievance proceedings, and, therefore, the order was final for the purpose of taking an appeal. Id., 114.

In *Pendiman Corp.* v. *White Oak Corp.*, 195 Conn. 393, 488 A.2d 449 (1985), our Supreme Court was asked to consider whether an interim award of attorney's fees in a nonfamily civil action was an appealable final judgment. The court specifically noted that it "need not reach the disputed question whether a definitive award of attorney's fees pendente lite in a proceeding other than a marital dissolution is so severable from the underlying litigation that an immediate appeal of such an interlocutory award is appropriate." Id., 397. Instead, it concluded that the order was not a final judgment because it was "not a conclusive adjudication and did not irreversibly require payments" by the plaintiff corporation. Id. Further, the order did not "constitute a final award of a monetary sum definitively payable" by the plaintiff corporation. Id., 398.

Here, the plaintiff's claim to immediate appellate review fails because the ruling from which the plaintiff appeals does not involve a right that is presently held by the plaintiff and that will be irretrievably lost or irreparably harmed if it is not immediately reviewed. As noted, although the plaintiff has a claim against the defendant's estate, she does not have a present legal right to the funds that are in the defendant's name.[10]

[10] "[General Statutes] § 46b-81 gives the court broad power to redistribute the property of either or both parties at the time of entering a decree. This does not mean that the party had a legal ownership interest in the assets of the other spouse during the marriage and prior to the decree. Connecticut is not by any means a community property state nor is any automatic form of joint ownership created simply by the fact that the parties enter into a marriage.

Any right that the plaintiff may have in the defendant's assets cannot be determined until the dissolution hearing. Further, unlike the typical pendente lite situation in which orders are not subject to review or retroactive modification at the time of dissolution, the court, in this instance, specifically stated as part of its order that the $100,000 would be taken into account at the time the court makes a final division of the marital assets. In other words, any moneys the defendant was permitted to expend as a retainer in the criminal case will still be considered a part of his estate for purposes of distribution.[11] Therefore, the circumstances at hand are sufficiently different from those in *Ahneman, Hiss* and *Goodson* so as to make the holdings in those cases inapposite to our conclusion.

Additionally, here, as in *Pendiman Corp.*, the court's order, by its very terms, was not a conclusive adjudication as it did not irreversibly conclude the plaintiff's interest in the defendant's estate because it expressly contemplated that the $100,000 to which it gave the defendant access would nevertheless be considered as a portion of his estate for purposes of equitable distribu-

"Up until the time that a property distribution is ordered by the court pursuant to . . . § 46b-81, the situation is governed by [General Statutes] § 46b-36. That statute explicitly provides that neither the husband nor the wife acquires by virtue of the marriage any right to or interest in any property held by the other before or acquired after the marriage." A. Rutkin & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice (1999) § 26.1, pp. 470–71.

[11] We are aware, from the record, that on October 8, 2009, after the issuance of the order granting the defendant access to $100,000 in a brokerage account in his own name for payment of a legal retainer in the criminal matter, he executed a promissory note in a like amount payable to "the party to whom the court distributes this note." Elsewhere in the recitals, this instrument is referred to as a "loan." In determining that the court's order granting partial relief from the automatic orders in this instance does not constitute a final judgment for appeal purposes, we specifically do not rely on the terms of this instrument, whose meaning and legal vitality are subject to determination by the court at the time of the marital dissolution judgment.

tion at the time of the dissolution hearing.[12] Therefore, the court's order did not so conclude the rights of the plaintiff that further proceedings could not affect them.

Finally, we are further persuaded that the court's order did not constitute an appealable final judgment in light of the decisional law regarding temporary injunctions. We believe that the automatic orders in marital dissolution judgments are most akin to temporary injunctions on the basis that they represent a temporary restraint on the use of or alienation of one's assets pending full adjudication in conjunction with a final hearing. "[I]n the absence of a statutory provision to the contrary, a denial or grant of a temporary injunction does not constitute a final judgment for purposes of appeal. . . . This is so because the purpose of a temporary injunction is to [maintain] the status quo while the rights of the parties are being determined. . . . Similarly, the denial of a temporary injunction is a determination that the status quo need not be maintained while the court determines the rights of the parties. By contrast, a permanent injunction effects a final determination of [those] rights." (Citations omitted; internal quotation marks omitted.) *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 811, 917 A.2d 951 (2007).

---

[12] The plaintiff argues that because the court could determine, at the time of judgment, that the plaintiff is entitled to 100 percent of the assets in the marital estate, which the parties have represented in filings with the trial court to be worth approximately $5 million, its order constitutes a final judgment regarding her rights to that sum simply because that sum is no longer available for distribution and it is unlikely that the defendant will have the wherewithal with which to reimburse her. This argument is based on the speculation that the court could feasibly award the plaintiff 100 percent of the parties' joint assets and 100 percent of the defendant's assets, while permitting the plaintiff to retain the assets presently in her own name. This argument presumes an exercise of discretion by the court and the theoretical determination of rights at the time of the marital dissolution hearing. It does not involve a presently existing right held by the plaintiff.

As in the case of a temporary injunction, the purpose of the automatic orders in marital dissolution cases is simply to maintain the status quo while the action is pending. And, as a permanent injunction typically encompasses the relief sought or granted by the temporary injunction, a dissolution judgment similarly assigns, to one party or the other, the property that was subject to the injunctive effect of the automatic orders. The similarity between a temporary injunction in a civil action and automatic orders in a dissolution action can readily be contrasted with pendente lite alimony or child support orders, which are fashioned to meet the financial needs of the parties until the marriage is dissolved and which, because they are not subject to retroactive modification, are irretrievably beyond the remedial reach of the court at the final hearing.

On the basis of the foregoing, we conclude that the court's order granting the defendant partial relief from the automatic orders did not constitute an appealable final judgment. As a consequence, we do not have subject matter jurisdiction to hear the plaintiff's appeal.

The appeal is dismissed.

In this opinion the other judges concurred.