******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAY M. TYLER *v.* THOMAS J. TYLER ET AL.
(AC 37297)

Beach, Sheldon and Harper, Js.

*Argued October 21, 2015—officially released March 8, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J. [order after remand].)

*Jay M. Tyler*, self-represented, the appellant
(plaintiff).

*Bruce D. Tyler*, self-represented, the appellant
(defendant and cross complaint plaintiff).

*Kathleen Eldergill*, for the appellee (defendant Rich-
ard Tatoian).

*Opinion*

SHELDON, J. This case arises out of a dispute between two brothers, plaintiffs Jay Tyler and Bruce Tyler,[1] and the attorney who served as trustee of their deceased mother's trust, defendant Richard Tatoian,[2] concerning Tatoian's alleged mismanagement of the trust and breaches of duties he allegedly owed, as trustee, to the plaintiffs, as trust beneficiaries. The case is back before us following our dismissal, for lack of a final judgment, of the plaintiffs' initial appeal from the trial court's rendering of partial summary judgment in favor of Tatoian on some but not all of the plaintiffs' claims against him. See *Tyler* v. *Tyler*, 151 Conn. App. 98, 93 A.3d 1179 (2014). After the plaintiffs filed their initial appeal, but before we dismissed that appeal, a jury trial was held in the Bridgeport Superior Court on the plaintiffs' claims against Tatoian on which summary judgment had not been rendered. The result of that trial was a general verdict in favor of Tatoian, which was returned by the jury on October 24, 2013. No appeal or amended appeal was ever taken from the judgment rendered in favor of Tatoian upon the jury's verdict.

After the dismissal of the plaintiffs' initial appeal, when this case was remanded to the trial court for further proceedings on Jay Tyler's reinstated claims against other defendants, the plaintiffs argued that a trial was also necessary on certain other claims against Tatoian that had not been resolved, either by summary judgment or by the jury's general verdict. Such unresolved claims, the plaintiffs argued, were: (1) Jay Tyler's claim that Tatoian had negligently failed to provide him with accountings of his mother's trust while his mother was still alive; and (2) both plaintiffs' related claims that Tatoian's failure to furnish them with trust accountings during their mother's lifetime had prevented them from exercising their right to seek an order from the Probate Court under General Statutes § 45a-204 compelling Tatoian, as trustee, not to keep the trust's assets invested in the same securities received by him.

Tatoian disagreed that any of the plaintiffs' claims against him were still pending in the trial court after their initial appeal was dismissed. He argued, to the contrary, that all such claims had either been tried to verdict before the jury or abandoned by the plaintiffs, either by not raising and requesting instructions on them in the trial court or by not appealing from the judgment rendered upon the jury's verdict on a claim of error arising from the trial court's failure or refusal to give such instructions as requested. The trial court, *Radcliffe, J.*, agreed with Tatoian that none of the plaintiffs' claims against him were still pending in the trial court after the dismissal of their initial appeal. It ruled, more specifically, that "all claims as to Richard Tatoian have been resolved based on the jury verdict rendered [October 24, 2013] and the granting of partial sum-

mary judgment."

In this appeal, the plaintiffs claim error in the trial court's determination that none of their claims against Tatoian were still pending in the trial court after our dismissal of their initial appeal. Here, as before the trial court, Tatoian disputes the plaintiffs' claim.[3] We agree with Tatoian, and thus affirm the judgment of the trial court.

We set forth the following relevant facts in our decision dismissing the plaintiffs' initial appeal with respect to Tatoian. "Ruth Tyler [executed an irrevocable trust] on October 8, 2004, for the benefit of her sons, John Tyler, Bruce Tyler, Thomas Tyler, Russell Tyler and Jay Tyler. The trust named Tatoian as trustee and provided for the termination of the trust upon Ruth Tyler's death, with the assets of the trust remaining after payment of various expenses to be distributed to her five sons in substantially equal shares. The trust specified, by reference to Ruth Tyler's will, that the shares allotted to the plaintiffs be reduced in accordance with the debt owed by each to Ruth Tyler. On April 1, 2010, Ruth Tyler died. Due to the value of the trust's assets and the amount of debt owed, Jay Tyler was not entitled to receive any money from the trust."[4] *Tyler* v. *Tyler*, supra, 151 Conn. App. 100–101.

Litigation over Ruth Tyler's estate began when Jay Tyler filed a complaint on January 28, 2011, in which he made several claims against all of his brothers and Tatoian. After several rounds of pleading, the operative pleadings in the case were Jay Tyler's third amended complaint dated June 20, 2012 (complaint), and Bruce Tyler's fourth amended cross complaint against Tatoian dated April 4, 2012 (cross complaint). The following claims were set forth in those pleadings. In the first count of the complaint, Jay Tyler sought to modify the trust, claiming that Thomas Tyler had exerted undue influence upon Ruth Tyler in relation to the trust and had conspired together with John Tyler, Russell Tyler and Tatoian to keep Ruth Tyler's trust and will a secret from him. In the second count of the complaint, Jay Tyler also sought to modify the trust based upon allegations that the defendants' actions against him had wrongfully deprived him of his share of the trust estate. In the third count of the complaint, Jay Tyler alleged negligence against Tatoian for failing to furnish him with accountings of the trust while his mother was still alive, and thereby preventing him from discovering the undue influence that had been exerted upon his mother in relation to the trust. In the fourth count of the complaint and the first count of the cross complaint, both plaintiffs alleged that Tatoian had failed to act as a prudent investor of the trust's assets, in violation of General Statutes § 45a-541b.[5] In the fifth count of the complaint and second count of the cross complaint, both plaintiffs alleged that Tatoian had failed to diver-

sify the trust's assets, in violation of General Statutes § 45a-541c.[6] In the sixth count of the complaint and the third count of the cross complaint, both plaintiffs alleged that Tatoian's failure to furnish them with trust accountings during their mother's lifetime had prevented them from exercising their right to seek an order from the Probate Court under § 45a-204[7] compelling Tatoian, as trustee, not to keep the trust's assets invested in the same securities received by him. Finally, in the seventh count of the complaint and the fourth count of the cross complaint, both plaintiffs alleged that Tatoian had breached his duty to the trust, and to them as trust beneficiaries, by failing to hold the investment advisor liable for losses allegedly resulting from the advisor's advice not to diversify the trust's assets.

On April 15, 2013, the defendants filed a joint motion for summary judgment as to all counts of the complaint and the cross complaint. In a memorandum of decision dated August 22, 2013, the court, *Sommer*, *J.*, initially granted summary judgment in favor of the defendants on all counts except for count seven of the complaint and count four of the cross complaint, in which the plaintiffs sought damages from Tatoian for failing to hold the investment advisor liable for losses allegedly resulting from the advisor's advice not to diversify the trust's assets.

After the trial court issued its summary judgment decision on August 22, 2013, both plaintiffs and Tatoian filed separate motions to reargue. In a memorandum of decision issued on September 19, 2013, the court denied all three motions to reargue in all respects but one, reversing its decision only as to its prior determination that Tatoian, as trustee, owed no duty to the plaintiffs, as remainder beneficiaries of their mother's trust, to provide them with accountings of the trust before their mother's death. Although that determination had been the basis upon which the court initially granted summary judgment in favor of Tatoian on counts three and six of the complaint and count three of the cross complaint (accounting claims),[8] the court reversed its decision only on the "issue" of Tatoian's alleged duty to provide trust accountings to the plaintiffs, without expressly referencing or reversing its summary judgment rulings on those counts. The court explained its reargument ruling as follows: "The court concludes that based on the evidence presented, (1) the subject trust provision is unclear,[9] (2) there is no statement in the law that remainder beneficiaries do not have a right to annual accountings from the trustee, and (3) remainder beneficiaries do have a right to petition the Probate Court for accountings. These findings raise issues of fact which require further evidence and are therefore appropriate for submission to the trier of fact.

"Based on the above analysis, the court therefore

vacates its order granting summary judgment as to the sole issue of the trustee's obligation to provide trust accounting to the remainder beneficiaries. Although the court is aware of the rule that a motion to reargue may not be used as a second bite of the apple, the circumstances of this case merit the court's consideration. . . .

"For the reasons stated above, the court denies the motions to reargue, except as to the sole issue of whether the trustee was obliged under § 8 (h) of the trust to provide annual accounting to the remainderman beneficiaries of the trust. Having considered the written arguments of the parties and determining that there is nothing further which requires submission to the court, the court reverses its prior decision granting summary judgment on this sole issue." (Footnote added.) None of the parties moved for clarification or articulation by the trial court with respect to the court's decision on the motions to reargue.

On October 3, 2013, the plaintiffs timely appealed to this court, within twenty days of the trial court's decision on the motions to reargue, from its previous decision on the defendants' motion for summary judgment. Since the plaintiffs initially claimed no error as to the court's decision on their motion to reargue, the only issues listed in their preliminary statement of issues concerned the court's initial summary judgment decision.[10]

Before the plaintiffs filed their opening brief in the initial appeal, their remaining claims against Tatoian on which summary judgment had not been rendered were brought to trial. On October 8, 2013, before the start of trial, Tatoian filed a pretrial memorandum in which he asserted that the only claims then pending against him in the trial court were those in which the plaintiffs were seeking damages for his failure to hold the investment advisor liable for losses allegedly resulting from following the advisor's advice not to diversify the trust's assets, as pleaded in the seventh count of the complaint and the fourth count of the cross complaint. Although the record before us does not reveal if the plaintiffs ever responded to the defendant's assertion by claiming that they had other claims pending against Tatoian in other counts of their complaint and/ or cross complaint, it does reveal that on the day after Tatoian filed his pretrial memorandum, the plaintiffs filed a preliminary request to charge in which they asked that the jury be instructed to make a finding on the one issue as to which the court had reversed its decision on reargument with respect to its initial summary judgment decision, to wit: whether the defendant was required to give them accountings of their mother's trust prior to her death. Because the plaintiffs have not provided us with a transcript of the jury trial, we cannot determine, on this record, whether or for what stated pur-

pose, if any, the requested instruction or any other instruction on that issue was ever given. On October 24, 2013, the jury ultimately returned a general verdict in favor of Tatoian,[11] after which no new appeal was ever taken and no amended appeal under Practice Book § 61-9[12] was ever filed.

On November 18, 2013, several weeks after the jury returned its general verdict in favor of Tatoian, the plaintiffs filed the opening brief in their initial appeal. In that brief, the plaintiffs argued for the first time, without previously amending their appeal form or their preliminary statement of issues,[13] that the trial court erred in deciding their motions to reargue. They claimed, in particular, that "the trial court's reversal of its decision with regard to the rights of trust beneficiaries to receive accountings from the trustee require[d] a reversal of its decision with regard to the plaintiff Jay M. Tyler's sixth count and cross plaintiff Bruce D. Tyler's third count based on their rights to accountings from the trustee . . . ." The plaintiffs thereby argued that the trial court erred by not expressly ruling, in its decision on their motions to reargue, that they were entitled not only to a jury determination on the issue of whether Tatoian had a duty to provide them with trust accountings before their mother died, but to a full trial on all claims presented in the complaint and the cross complaint that were based materially upon Tatoian's alleged breach of that duty to provide trust accountings.

In his answering brief, Tatoian did not respond directly to the plaintiffs' argument that the trial court's reversal of its initial summary judgment ruling on the issue of his alleged duty to provide them with trust accountings during their mother's lifetime entitled them to a full trial on all claims that were based materially upon his alleged breach of that duty. Instead, addressing only the merits of those related claims for damages, he argued that "the trial court's ruling that the beneficiaries had a right to receive accountings during the settlor's lifetime does not affect its ruling on the plaintiffs' claims regarding the right to seek a court order."[14]

Oral argument on the plaintiffs' initial appeal was held on March 5, 2014. During argument, we raised sua sponte the issue of whether there was a final judgment as to Tatoian. The following day, we invited the parties to submit supplemental briefs on that issue, which we described as "whether the ruling from which the plaintiffs appeal constitutes a final judgment for the purposes of determining the subject matter jurisdiction of this court."[15] *Tyler* v. *Tyler*, supra, 151 Conn. App. 102, 103 n.6. On June 17, 2014, after the plaintiffs had filed their supplemental brief,[16] we issued our final decision on the plaintiffs' initial appeal.

In that decision, we first dismissed the appeal as to Tatoian for lack of subject matter jurisdiction because

the challenged summary judgment ruling in his favor did not finally dispose of all of the plaintiffs' claims against him, and thus was not a final judgment. Id., 103–104. In that same decision, we also found error in the trial court's rendering of summary judgment in favor of the defendants on Jay Tyler's claim seeking to modify the trust on the ground of undue influence, concluding that there was a genuine issue of material fact as to whether Thomas Tyler had exerted undue influence upon his mother in relation to the trust. Id., 108. Accordingly, we set aside the summary judgment rendered in favor of the defendants on that claim and remanded this case to the trial court "for further proceedings consistent with this opinion."[17] Id., 109.

After we issued our decision in *Tyler*, the parties returned to the trial court for a status conference on October 1, 2014. At that conference, in a lengthy colloquy with the trial court, *Radcliffe, J.*, the plaintiffs argued that further proceedings were necessary both on Jay Tyler's remanded claim to modify the trust on the ground of undue influence and on both plaintiffs' claims for damages against Tatoian on the basis of his failure to provide them with trust accountings during their mother's lifetime. The latter claims, they contended, had not been tried when their other claims as to which summary judgment had not been rendered were brought to trial. Such claims, they argued, could not have been tried at that time because their initial appeal from the trial court's summary judgment ruling on those claims, as revised by its later ruling on their motion to reargue, was still pending before this court. The plaintiffs finally argued that the continuing pendency in the trial court of at least some of their claims against Tatoian had been confirmed by this court's dismissal of their initial appeal for lack of a final judgment, which assertedly was based upon our conclusion that one or more unresolved claims were still pending in the trial court at the time of dismissal, long after the conclusion of the intervening jury trial.

Tatoian did not disagree with the plaintiffs that their claims for damages that were based upon his failure to provide them with trust accountings during their mother's lifetime had not been tried to verdict in the October, 2013 jury trial. He argued, however, that the plaintiffs bore full responsibility for that result because they had abandoned those claims. Tatoian claimed, more particularly, that the trial court's decision on the motion to reargue had left open a single factual issue—whether, as trustee of the plaintiffs' mother's trust, he owed a duty to the plaintiffs, as remainder beneficiaries of the trust, to provide them with trust accountings while their mother was still alive. That issue, he noted, was pleaded not only in the plaintiffs' accounting claims, upon which the jury was not instructed, but in their investment advisor claims, upon which it undeniably was instructed. If, then, he argued, the plaintiffs

believed at the time of trial, as they now contend, that the trial court's reargument ruling should have resulted in the vacation of its initial decision granting summary judgment to Tatoian on all counts of their complaint and cross complaint that were based upon his alleged breach of that duty, it was incumbent upon them to ask that the jury be instructed on those claims at trial and, if dissatisfied with the court's instructions as given, to claim error in those instructions in a subsequent appeal to this court. If the plaintiffs failed to follow up on their preliminary request to charge, either by not insisting that the jury be instructed in accordance with it or by failing to appeal from the trial court's failure or refusal to so instruct as requested therein, the plaintiffs must be found to have abandoned those claims at or shortly after trial. Here, then, he concluded, since the plaintiffs did not appeal from the judgment rendered upon the jury's verdict against them, they must be found to have abandoned their accountings claims. Therefore, he concluded, no such claims were still pending against him in the trial court following our dismissal of the plaintiffs' initial appeal.

The trial court agreed with Tatoian that none of the plaintiffs' claims against him were still pending in the trial court when this case was remanded for further proceedings after our dismissal of the initial appeal. In reaching that conclusion, the court reasoned as follows. First, because the trial court never ordered bifurcation of the trial, all of the plaintiffs' pending claims against Tatoian[18] were presumptively contested in that trial. Second, because the jury returned a general verdict for Tatoian, all such pending claims were presumptively decided in his favor at trial. Since the plaintiffs provided no transcript of the jury trial to the trial court to support their contention that the accountings claims had not in fact been tried to verdict before the jury, the trial court concluded that they had failed to overcome the presumption arising from the general verdict that all of the plaintiffs' remaining claims had been resolved in Tatoian's favor by that verdict. The court therefore concluded that the plaintiffs had no claims pending against Tatoian in the trial court after our dismissal of their initial appeal.

Finally, addressing the plaintiffs' claim that this court's dismissal of their initial appeal was based upon our determination that the plaintiffs still had claims pending against Tatoian in the trial court at the time of dismissal, the court rejected that claim summarily. Under our law, the court concluded, the time for determining if a judgment is a final judgment for purposes of appeal is when the appeal is filed, not the later time when it is finally dismissed. The trial court issued an order declaring that "all claims as to Richard Tatoian have been resolved based on the jury verdict rendered [October 24, 2013] and the granting of partial summary judgment."[19] The plaintiffs now appeal from that order.

In challenging the trial court's determination that all of their claims against Tatoian were finally resolved by summary judgment or by the jury's verdict at trial, the plaintiffs insist, as they did before the trial court: (1) that their claims for damages that were based upon Tatoian's failure to provide them with trust accountings during their mother's lifetime were not tried to verdict before the jury,[20] and thus were still pending in the trial court, unresolved and awaiting trial, when their initial appeal was dismissed; and (2) that we confirmed this conclusion by dismissing their initial appeal for lack of a final judgment because the basis for our dismissal was the continuing pendency in the trial court, long after the end of trial, of at least one of their claims against Tatoian. Tatoian rejects both of the plaintiffs' arguments, contending here, as he did before the trial court, that on this record, all of the plaintiffs' claims against him upon which summary judgment was not previously rendered were either tried to verdict before the jury or abandoned by the plaintiffs, and thus finally resolved, by the time the initial appeal against him was dismissed. We agree with Tatoian, and thus affirm the determination of the trial court that no such claims were still pending against him in the trial court following the dismissal when the case was remanded for further proceedings on other claims.

I

Whether the trial court correctly determined that none of the plaintiffs' claims against Tatoian were still pending in the trial court after our dismissal of their initial appeal is a mixed question of law and fact. "Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Correia* v. *Rowland*, 263 Conn. 453, 462, 820 A.2d 1009 (2003); see also *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 479, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008). We conclude that all of the plaintiffs' claims against Tatoian on which summary judgment was not rendered before trial were finally resolved by the end of trial, although not necessarily, as the trial court ruled, by the jury's general verdict in his favor.

As the trial court observed, no order was ever issued that the trial be bifurcated. Therefore, the court was correct in concluding that the jury's general verdict for Tatoian presumptively resolved all of plaintiffs' pending claims against him in his favor, if and to the extent that the jury was instructed on those claims. *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993) ("[t]he so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party" [internal quotation marks omitted]). Among the claims then pending before the trial court were the

plaintiffs' claims that Tatoian breached his duty to provide them with accountings of their mother's trust before she died, and their related claims for damages based upon Tatoian's alleged breach of that duty. All of these claims were still pending in the trial court at the time of the jury trial because, when the court reversed its prior decision that Tatoian owed the plaintiffs no such duty, finding instead that there was a genuine issue of material fact as to the existence of such a duty on which a factual determination was required, it restored that issue to the list of claims and issues that remained to be tried in this case. Logically, if the existence of such a duty remained an open issue to be tried for any purpose, it remained an open issue to be tried for all purposes for which it was pleaded, including the merits of every claim against Tatoian that was based materially upon his breach of that alleged duty.

If, then, the plaintiffs sought to prosecute any such claim to verdict at trial, and the trial court instructed the jury on it, the jury's general verdict for Tatoian would presumptively have resolved that claim in Tatoian's favor. If, by contrast, the jury was not instructed on any such pending claim at trial, either because the plaintiffs did not request that the jury be so instructed or because the trial court failed or refused to give such instructions despite the plaintiffs' request that it do so, then that claim would not have been resolved by the jury's general verdict. Because, in the absence of a trial transcript, we cannot determine whether or not such jury instructions were actually given in this case, we cannot agree with the trial court's presumptive finding that all of the plaintiffs' pending claims against Tatoian on which summary judgment was not previously rendered were finally resolved in his favor by the jury's general verdict at trial.

Notwithstanding our disagreement with the trial court as to its interpretation of the jury's general verdict for Tatoian, we agree with the court's ultimate determination that none of the plaintiffs' claims against Tatoian were still pending in the trial court when the case was remanded for further proceedings after we dismissed their initial appeal. In reaching this conclusion, we agree with Tatoian's argument that, even in the absence of a trial transcript, we can clearly tell from the plaintiffs' failure to appeal from the judgment rendered upon the jury's general verdict that none of their claims against him were still pending after the initial appeal was dismissed. Our reasons for this conclusion are as follows.

First, if and to the extent that the jury was actually instructed on the plaintiffs' pending claims, then such claims were no longer pending in the trial court after trial because they all had been resolved in Tatoian's favor by the jury's general verdict. By not appealing from that judgment, the plaintiffs would have accepted the finality of the jury's determinations with respect to

all such instructed-upon claims.

Second, if any pending claims were not prosecuted to verdict at trial because the plaintiffs did not seek to prove them or to have the jury instructed upon them at trial, then by so failing to prosecute them, they must be deemed to have abandoned such claims, and thus to have forfeited their right to prosecute them further. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . *These same principles apply to claims raised in the trial court*." [Citation omitted; emphasis added; internal quotation marks omitted.]). Once a claim is abandoned, it is no longer pending before the court. We also note that the plaintiffs cannot claim that they were obstructed in any way from raising and prosecuting their accounting claims at trial because of the pendency of their initial appeal. The initial appeal, as framed by the plaintiffs throughout the trial, had no bearing on the accounting claims because the plaintiffs' initial appeal was limited in scope to other claims, as disclosed by their appeal form and their preliminary statement of issues. It was not until after the trial was completed, when they filed their opening brief with this court, that the plaintiffs first raised any claim of error as to any of their accounting claims against Tatoian. Until that time, they gave no notice that the appeal would raise any such claim, for the claim was based upon the trial court's ruling on their motions to reargue, which had not been mentioned in their appeal form or their preliminary statement of issues.

Third and finally, if the plaintiffs requested that the jury be instructed on certain pending claims but the trial court failed or refused to give such instructions, then Tatoian is correct in arguing that they could and should have appealed from the judgment rendered against them upon the jury's general verdict, claiming error in the court's failure or refusal to instruct the jury as requested. The plaintiffs' failure to appeal from the judgment on the basis of such instructional error constituted an abandonment of all claims as to which the court refused to instruct the jury as requested just as surely as if the plaintiffs had not sought instruction on them at all. Abandoned claims, to reiterate, are no longer pending and cannot be further prosecuted once they have been abandoned.

In this case, the plaintiffs failed to appeal on any

basis from the judgment rendered against them in the trial court upon the jury's general verdict. The plaintiffs' failure to appeal gives clear evidence that all of their claims against Tatoian were either raised, instructed upon and tried to verdict before the jury or abandoned, either by failing to raise and request instructions on them at trial or by not appealing from the trial court's failure or refusal to instruct on them despite their request. In each such scenario, the plaintiffs' failure to appeal from the judgment rendered upon the jury's verdict established that all of their claims on which summary judgment was not rendered were finally resolved at or shortly after trial, either by the jury's general verdict or by the plaintiffs' abandonment of them. Accordingly, we agree with the trial court that no such claims were still pending against Tatoian in the trial court when the case was remanded for further proceedings on other claims after our dismissal of the plaintiffs' initial appeal.

II

Having concluded that no claims against Tatoian were pending by the end of the appeal period following trial, we next address the plaintiffs' argument that our decision in *Tyler* necessarily requires the opposite conclusion. The plaintiffs argue that we decided in *Tyler* that one or more counts against Tatoian were still pending in the trial court after that court partially reversed its summary judgment decision as to the accounting issue and the jury returned its verdict. In particular, the plaintiffs direct our attention to the following two statements in *Tyler*: "[T]he court's [August 22, 2013 summary judgment] ruling disposed of only a portion of the plaintiffs' counts asserted against Tatoian"; *Tyler* v. *Tyler*, supra, 151 Conn. App. 104; and "[c]ertain counts against Tatoian have since been resolved at trial." Id., 104 n.7. The plaintiffs interpret these statements to mean that this court concluded that certain counts remained pending against Tatoian at the time we dismissed the appeal, which occurred after the trial concluded.

The plaintiffs' claim is based on a fundamental misunderstanding of our basic procedure. "It is axiomatic that the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § 61-1 . . . ." (Citation omitted.) *Parrotta* v. *Parrotta*, 119 Conn. App. 472, 475, 988 A.2d 383 (2010). The plaintiffs misunderstand the correct measuring point for determining if the judgment appealed from is final. In *Tyler*, we concluded that the August 22, 2013 summary judgment ruling, from which the plaintiffs appealed, was not a final judgment as to Tatoian at the time the appeal therefrom was filed because it did not dispose of all of the counts *then* pending against him. We did not conclude that there was no final judgment as to Tatoian at the later time

when we finally dismissed the appeal, because the measuring point for determining if an appeal is from a final judgment is when the appeal is filed. See *McKeon* v. *Lennon*, 131 Conn. App. 585, 611, 27 A.3d 436 (dismissing appeal of order for attorney's fees for lack of final judgment because amount of attorney's fees had not been conclusively determined at time appeal filed), cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011).

Final judgment as to Tatoian did not enter until after the jury returned its verdict; however, the plaintiffs never amended their initial appeal to challenge that verdict pursuant to Practice Book § 61-9. The plaintiffs might have been confused because this verdict was returned before we heard oral arguments and issued our decision in the initial appeal. However, there was no final judgment as to Tatoian at the relevant time, when the plaintiffs filed that appeal. Accordingly, Judge Radcliffe correctly interpreted our decision in *Tyler*, which was not based upon, and signified nothing as to, the continuing pendency of claims against Tatoian at the time of its issuance.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Bruce Tyler was named as a defendant in the complaint; however, he also filed a cross complaint, initially against his brothers, John Tyler, Thomas Tyler, and Russell Tyler, but which was later amended to include claims against only Richard Tatoian. For clarity, we will refer to Bruce Tyler and Jay Tyler collectively as the plaintiffs and by name when referencing them individually.

[2] Tatoian is the only defendant as to whom the plaintiffs appeal. Jay Tyler had also asserted claims against his brothers, John Tyler, Thomas Tyler, Bruce Tyler, and Russell Tyler, but withdrew his claims against them on January 21, 2015. In addition, Bruce Tyler had cited as parties Richard Mapplethorpe and Citigroup Global Markets, Inc., the financial advisors for the trust; however, the court dismissed the claims against them for lack of standing. For clarity, we will refer to Tatoian individually by name. Any references to the defendants in the underlying case include John Tyler, Thomas Tyler, Russell Tyler and Tatoian, but not Bruce Tyler. See footnote 1 of this opinion.

[3] Tatoian makes a claim in his brief that the plaintiffs' appeal is frivolous and requests attorney's fees under Practice Book § 85-2. We decline to decide this issue because Tatoian failed to make his request in a separate motion. See Practice Book § 85-3; *Hernandez* v. *Dawson*, 109 Conn. App. 639, 643–44, 953 A.2d 664 (2008).

[4] "Under Ruth Tyler's previous will, each brother's share was to be calculated on the basis of his net worth, where the brother with the lowest net worth would receive payment until his net worth was equal to the net worth of the brother with the next lowest net worth, and so on. If this distribution scheme had been in effect at the time of Ruth Tyler's death, Jay Tyler allegedly would have received the lion's share of the estate." *Tyler* v. *Tyler*, supra, 151 Conn. App. 101 n.2.

[5] General Statutes § 45a-541b provides: "(a) A trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution.

"(b) A trustee's investment and management decisions respecting individual assets shall be evaluated not in isolation, but in the context of the trust portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the trust.

"(c) Among circumstances that a trustee shall consider in investing and managing trust assets are such of the following as are relevant to the trust or its beneficiaries: (1) General economic conditions; (2) the possible effect

of inflation or deflation; (3) the expected tax consequences of investment decisions, strategies and distributions; (4) the role that each investment or course of action plays within the overall trust portfolio, which may include financial assets, interests in closely held enterprises, tangible and intangible personal property and real property; (5) the expected total return from income and the appreciation of capital; (6) related trusts and other income and resources of the beneficiaries; (7) needs for liquidity, for regularity of income and for preservation or appreciation of capital; (8) an asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries; (9) the size of the portfolio; and (10) the nature and estimated duration of the trust.

"(d) A trustee shall take reasonable steps to verify facts relevant to the investment and management of trust assets.

"(e) Subject to the standard of sections 45a-541 to 45a-541*l*, inclusive, a trustee may invest in any kind of property or type of investment.

"(f) A trustee who has special skills or expertise, or is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise, has a duty to use those special skills or expertise."

[6] Although these counts cite § 45a-541b, they quote § 45a-541c, which provides: "A trustee shall diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying."

[7] General Statutes § 45a-204 provides: "Trust funds received by executors, trustees, guardians or conservators may be kept invested in the securities received by them, unless it is otherwise ordered by the Court of Probate or unless the instrument under which such trust was created directs that a change of investments shall be made, and the fiduciaries thereof shall not be liable for any loss that may occur by depreciation of such securities."

[8] The court found as follows in its initial decision partially granting summary judgment on August 22, 2013: "[T]he court finds that Tatoian was not required to furnish accountings to anyone other than Ruth Tyler prior to Ruth Tyler's death. The trust states that beneficiaries entitled to receive income are also entitled to twice yearly accountings. It also states that the Tyler brothers are entitled to receive income from the trust only upon Ruth Tyler's death. The plaintiff was not entitled to any accountings because his loans from Ruth Tyler exceeded his share of the trust; therefore, he was never entitled to receive income. The cross plaintiff was only entitled to accountings after Ruth Tyler's death. Therefore, the motion for summary judgment should be granted as to the third count of the complaint, alleging negligent failure to furnish accountings, and the sixth count of the complaint and third count of the cross complaint alleging deprivation of the right to seek a court order under § 45a-204 because there were no accountings prior to Ruth Tyler's death."

[9] The disputed provision of the trust, § 8 (h), provides: "The Trustee shall render an account at least once each twelve months to each adult beneficiary and to the natural or legal guardians, if any, of each minor or otherwise legally disabled beneficiary then receiving or entitled to receive income hereunder." Tatoian argues that this provision means that he was only required to provide an accounting to those beneficiaries who were "then receiving or entitled to receive income . . . ." Because Ruth Tyler was the only income beneficiary during her lifetime, the plaintiffs were not entitled to an accounting while she was alive. The plaintiffs argue, on the other hand, that Tatoian was required to provide a yearly accounting to all beneficiaries, and that the phrase "then receiving or entitled to receive income" only modified "natural or legal guardians . . . of each minor or otherwise legally disabled beneficiary," and thus, they were entitled to an accounting on a yearly basis regardless of whether they were "then receiving or entitled to receive income . . . ."

[10] The plaintiffs filed a preliminary statement of issues on October 10, 2013, which was returned to the plaintiffs pursuant to Practice Book § 62-7. The plaintiffs refiled an identical preliminary statement of issues on November 18, 2013, which read as follows: "The appellants state that they expect the issues on appeal will be: 1. Did the trial court err in its reliance on General Statutes § 45a-204? 2. Did the trial court err in shifting the burden of proof to the plaintiff and cross plaintiff? 3. Did the trial court err in deciding that there was no genuine issue of material fact with regard to 'undue influence' as opposed to limiting its role to that of determining whether a genuine issue exists? 4. Did the trial court misconstrue various facts?"

We note that although § 45a-204 was essential to count six of the complaint

and count three of the cross complaint, the court's decision granting summary judgment on the counts alleging violation of the prudent investor rule and failure to diversify the trust assets was based upon the court's interpretation that § 45a-204 allowed Tatoian to keep the trust funds invested in the securities received by him, unless otherwise ordered by the Probate Court or mandated by the language of the trust.

[11] The judgment in this case reflects that counts three and six of the complaint and count three of the cross complaint were resolved by summary judgment: "The matter thence came to August 22, 2013, when the court (*Sommer, J.*) granted the defendants' Thomas J. Tyler, Russell J. Tyler, John E. Tyler, and Richard Tatoian's motion for summary judgment as to counts 3, 4, 5 and 6 of the third amended complaint and as to counts 1, 2 and 3 of the fourth amended cross complaint. The matter thence came to the present time when the parties appeared and were at issue on the remaining counts, as on file and when all the evidence having been submitted, the court thereupon committed the action to the jury, which returned its verdict as follows: defendant's verdict. In this case, the jury unanimously finds the issues for the defendant, Richard Tatoian, as against the plaintiffs . . . Jay M. Tyler [and] (cross plaintiff) Bruce Tyler."

[12] Practice Book § 61-9 provides: "Should the trial court, subsequent to the filing of a pending appeal, make a decision that the appellant desires to have reviewed, the appellant shall file an amended appeal within twenty days from the issuance of notice of the decision as provided for in Section 63-1.

"The amended appeal shall be filed in the trial court in the same manner as an original appeal pursuant to Section 63-3. No additional fee is required to be paid upon the filing of an amended appeal.

"Within ten days of filing the amended appeal, the appellant shall file with the appellate clerk an original and one copy of either a certificate stating that there are no changes to the Section 63-4 papers filed with the original appeal or any amendments to those papers. Any other party may file an original and one copy of responsive Section 63-4 papers within twenty days of the filing of the certificate or the amendments.

"If the original appeal is dismissed for lack of jurisdiction, the amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed.

"After disposition of an appeal where no amended appeals related to that appeal are pending, a subsequent appeal shall be filed as a new appeal. If the amended appeal is filed after the filing of the appellant's brief but before the filing of the appellee's brief, the appellant may move for leave to file a supplemental brief. If the amended appeal is filed after the filing of the appellee's brief, either party may move for such leave. In any event, the court may order that an amended appeal be briefed or heard separately from the original appeal.

"If the appellant files a subsequent appeal from a trial court decision in a case, where there is a pending appeal, the subsequent appeal shall be treated as an amended appeal, and there shall be no refund of the fees paid."

[13] Practice Book § 63-4 (b) provides in relevant part: "Except as otherwise provided, a party may as of right file amendments to the preliminary statement of issues or the designation of the pleadings in the trial court case file at any time until that party's brief is filed. . . ."

[14] Tatoian further argued in his brief that the language of the trust did not require him to provide trust accountings to the plaintiffs during their mother's lifetime, but even if it did, that the terms of the trust would have imposed liability upon him only if he had acted in bad faith. Moreover, he argued, even if the plaintiffs had received trust accountings during their mother's lifetime and petitioned the Probate Court for an order to diversify the trust's assets, the Probate Court would not likely have granted such a petition and overridden the terms of the trust and his discretionary decision as trustee without a showing of bad faith. Finally, he argued that since he had "kept invested the securities received by him as the trust corpus, he [was] not liable with respect [to] any losses as a result of the assets' decrease in value," pursuant to § 45a-204. (Internal quotation marks omitted.)

[15] The issue of final judgment was first "raised by Tatoian in a motion to dismiss filed in this court pursuant to Practice Book § 61-4 (a) [on October 7, 2013]. He later withdrew the motion in the interests of bringing this matter to conclusion." (Internal quotation marks omitted.) *Tyler* v. *Tyler*, supra, 151 Conn. App. 102 n.5. We nevertheless dismissed the initial appeal as to Tatoian because "[n]either the parties nor the trial court . . . can confer jurisdiction upon [an appellate] court . . . ." (Citation omitted; internal quotation marks omitted.) Id.

[16] Tatoian did not submit a supplemental brief.

[17] Jay Tyler withdrew his complaint against all of his brothers on January 21, 2015, and, thus, he has abandoned his claims seeking to modify the trust and alleging undue influence.

[18] Under General Statutes § 52-205 and Practice Book § 15-1, the trial court has the discretion to try one or more issue before the other issues.

[19] The plaintiffs filed a motion for articulation with respect to this decision, to which the court responded by signing the transcript of the October 1, 2014 hearing.

[20] In support of this argument, the plaintiffs urge us to consider that their trust accountings could not have been resolved at trial because the pleadings had not been closed. Specifically, the plaintiffs assert that Bruce Tyler never replied to Tatoian's ninth, eleventh, and fifteenth special defenses, and that these defenses were never withdrawn as to counts 1, 2 and 3 of the cross complaint. Accordingly, the plaintiffs argue, the court was in error when it assumed that all of those counts were disposed of at trial or by summary judgment. Tatoian replies that counts 1, 2 and 3 of the cross complaint did not proceed to trial, and, thus, that the pleadings were closed as to all counts proceeding to trial.